## WEST *v.* THE STATE.

CRIMINAL LAW.—*Practice.—Motion to Quash.*—A motion to quash an indictment can not be regularly made after pleading to the same.

SAME.—*Indictment.*—Where the defendant is named in the caption as James A. Smith, and first in the body of the indictment as James Smith, and afterward in the body of the indictment he is referred to as the said James A. Smith, the difference in the name will create no uncertainty.

SAME.—An indictment for murder, charging that the defendant, by means stated, inflicted " a mortal injury, to wit, a fracture three inches long, on the head of " A., "of which said mortal injury, or fracture, the said " A. " then and there died," sufficiently showed what caused the death of the deceased.

SAME.—*Description of Mortal Wound.*—An indictment for murder, describing the mortal wounds in the following words: ";giving him, the said " A., "in and upon the head of him, the said " A., "divers and sundry mortal wounds and injuries, which are too numerous to be more particularly described by said grand jury in this indictment, of which wounds and injuries the said " A. " then and there died," was sufficient.

SAME,—*Practice.—Objection to Evidence.*—Where the ground of an objection to the admission of evidence on the trial of a criminal cause is not stated or pointed out to the court below, the Supreme Court will not examine the question of its admissibility.

SAME.—*Instruction to Jury.—Alibi.*—On the trial of a criminal cause, where evidence has been introduced tending to show that the defendant was at a place other than the place where the crime was committed, at the time of its commission, but where the exact time of the commission of the crime is not shown, but it is shown to have been committed during a night, or a part of a night, it is right to instruct the jury that evidence of an *alibi* must cover the whole of such time.

SAME.—It is error in such case to instruct the jury that they are to determine whether it was actually and physically impossible for the accused to have been at the place where the crime was committed, and also at the place indicated by the evidence in support of the *alibi.*

From the Grant Circuit Court.

*A. Steele* and *R. T. St. John,* for appellant.

*C. A. Buskirk,* Attorney General, *A. Moore,* and *R. D. Doyle,* for the State.

WORDEN, J.—The appellant and James A. Smith were jointly indicted for the murder of Ahab McMath. The indictment contained two counts. The record shows that the defendants, upon being arraigned upon the indictment, pleaded not guilty thereto; and that afterward they moved the court for separate trials, which was granted. Thereupon West, without withdrawing his plea, moved to quash each count in the indictment, but his motion was overruled, and he excepted. West was thereupon put on trial, which resulted in a verdict of guilty of murder in the first degree, as he stood charged in the indictment, and that he be imprisoned in the state prison during life.

Motions for a new trial and in arrest of judgment overruled, and exception; judgment on the verdict.

Errors are assigned upon the overruling of the motions to quash, for a new trial, and in arrest of judgment.

The motion to quash, as we have seen, was made after the defendant had pleaded to the indictment. The motion could not then have been regularly made. The defendant might doubtless have obtained leave to withdraw his plea for the purpose of moving to quash, but this was not done. Perhaps, however, the court might in its discretion have entertained the motion without the withdrawal of the plea.

We think the objections urged to the indictment are invalid. The following is the objection urged to the first count:

The indictment is entitled as follows: "*The State of Indiana* v. *Daniel West and James A. Smith.*" It charges that Daniel West and "James Smith" (not James A. Smith) perpetrated the assault upon the deceased, and in the subsequent

parts of the count Smith is designated as "the said James A. Smith." Where Smith is first named in the body of the count he is called "James Smith," and when subsequently named he is referred to as "the said James A. Smith." The subsequent reference to him as "the said James A. Smith" indicates the Smith that had previously been spoken of as "James Smith," as no other Smith had been spoken of. There is no uncertainty in the indictment in this respect.

Another objection to the first count is, that it is uncertain, from the allegations, what caused the death of the deceased. It is averred that the appellant and Smith, by the means stated, gave the said Ahab McMath "a mortal injury, to wit, a fracture three inches long, on the head of him, the said Ahab McMath, of which said mortal injury, or fracture, the said Ahab McMath then and there died."

It is claimed that it is uncertain whether the deceased died of the injury or the fracture, it being stated in the alternative. But it is clear that the terms "injury" and "fracture" were used to express the same, and not different things. The injury is stated under the *videlicet* to be a fracture.

The objection to the second count is, that the mortal wounds are not sufficiently described. The description is as follows:

"Giving him, the said Ahab McMath, in and upon the head of him, the said Ahab McMath, divers and sundry deadly and mortal wounds and injuries, which are too numerous to be more particularly described by said grand jury in this indictment, of which wounds and injuries, all and singular, the said Ahab McMath then and there died."

This description of the mortal wounds, we think, is amply sufficient. It was anciently thought necessary to state the length and depth of the wounds, in order that the court might be enabled to determine whether they were mortal. But this doctrine, if it ever was the law, is now exploded both in England and Indiana. *Rex* v. *Tomlinson*, 6 C. & P. 370; *Dias* v. *The State*, 7 Blackf. 20.

In 2 Bishop Crim. Proced., sec. 518, an English case is cited

in which the following description of the mortal wounds was held sufficient, viz.:

"Several mortal bruises, lacerations, and wounds, in and upon the belly, breast, stomach, and sides of him the said Jonathan Depledge, of which said several mortal bruises, lacerations, and wounds, the said Jonathan Depledge died."

So, in the case of *Dillon* v. *The State,* 9 Ind. 408, the following description was held sufficient, viz.:

"By then and there inflicting divers mortal wounds and injuries upon the head, back and abdomen of her the said Margaret Dillon, which caused the death of her the said Margaret Dillon." See, also, *Jones* v. *The State,* 35 Ind. 122.

We come to the motion for a new trial. A certain paper was given in evidence over the objection of the defendant, and exception was taken. But it does not appear that any ground of objection was pointed out or stated to the court. We perceive no good reason why the case should not be deemed as coming within the ruling of this court in numerous cases, that where the ground of objection to the admission of evidence is not stated or pointed out to the court below, this court will not examine the question of admissibility.

The evidence in the cause is before us, and we have examined it with that care which the nature of the case and the rights of the appellant seemed to require. Without expressing any opinion as to whether the verdict is sustained by the evidence, we proceed to state enough of the case to show the application of certain charges to the jury hereinafter noticed. The evidence tended to show that McMath, the deceased, left the house of one John Jones about twenty minutes past ten o'clock on the night of the 24th of May, 1874, and that he was murdered on his way home at no very great distance from the house of Jones. His body was found about a week afterward in a pond, some miles distant from the place where he is supposed to have been murdered. Upon his head were found wounds and fractures sufficient to have caused his death. There was evidence tending to show that the appellant was the murderer or one of the murderers. On the other hand, there was the evidence of

several witnesses tending to show that on the night in question the appellant went to the house of one William West. some time from nine to eleven o'clock, and that he remained there until morning.

On this subject the State asked, and the court gave, the following charges, exceptions being taken by the defendant:

" 7. The defendant has introduced evidence for the purpose of showing that he could not have been present at the place where the alleged crime was committed, because of his presence at another place at the time of the commission of the offence. This is usually called an *alibi*.

" 8. This defence is liable to great abuse, growing out of the ease with which it may be fabricated, and the difficulty with which such fabrication can be detected. It often happens in the recollection of ordinary events, that the day may come to be mistaken for another, as by being confounded with the preceding or following. Thus, it has occurred that the assignment of events, true in themselves, of one day, have been confounded with those of another day. The evidence offered upon this subject should be carefully compared with the other evidence given in the cause, and you should ascertain how it corresponds with the account which the accused himself has given of his whereabouts on that day.

" 9. If the account which the accused gives concerning the *alibi* agrees with the account which the witnesses give, such agreement tends to confirm the *alibi* evidence. But if the statements of the accused and the witnesses do not correspond, such contradictions tend to weaken the defence.

" 10. Where the exact time of the commission of the alleged crime is not shown to have been committed, but during a night, or a part of a night, the *alibi* evidence ought to cover the whole of such time.

" 11. Or if the time of the commission of the offence and that indicated by the *alibi* approximate to each other, then you are to determine, under all the circumstances in the case, whether the *alibi* is established, and also whether it was act-

ually and physically impossible for the accused to have been at both places."

Objection is made to the tenth charge. The charge as it comes up to us is somewhat obscurely worded, but it seems to mean that where the exact time of the commission of the alleged offence is not shown, but it is shown to have been committed during a night, or a part of a night, the evidence of the *alibi* ought to cover the whole of such time. With this reading of the charge, we do not see that it is objectionable.

But the eleventh charge we regard as radically wrong. The jury are told that they are to determine whether it was actually and physically impossible for the accused to have been at both places. The meaning of this is, that the jury were to determine whether it was actually and physically impossible for the accused to have been at the place where the crime was committed at the time of its commission, and at the place where the evidence of the *alibi* showed he was at the time indicated by that evidence. Applying the charge to the case made by the evidence, the jury were told that they were to determine whether it was actually and physically impossible for the defendant to have been present at the time and place of the homicide, and also at the house of William West at the time the evidence showed he was there. This is the meaning of the charge, if it had any meaning applicable to the case.

The inference which the jury must have drawn from the charge is, that if it were not actually and physically impossible for the defendant to have been at both places at the times indicated, the defence that the defendant was elsewhere than at the place of the homicide at the time of its commission failed. If this was not to be understood by the jury, and if this was not the significance of the charge, why were they to determine upon the actual and physical impossibility of the thing? It might not be actually and physically impossible for the accused to have been present at the time and place of the homicide, and to have been at the house of William West at the time indicated by the evidence on that subject; and yet it might be highly improbable. As was said by this court in

the case of *Adams* v. *The State*, 42 Ind. 373, we think the term "impossible" quite too strong a term to be employed in such case. If the jury believed that the defendant was at the house of William West at the time indicated by the evidence, and believed that it was improbable, therefore, that he was present at the time of the homicide, the defence was for the consideration of the jury. Such improbability need not be so great as to amount to impossibility. If the improbability was so great, taking the evidence all together, as to raise a reasonable doubt of the defendant's guilt, he was entitled to the benefit of the doubt, and, therefore, to an acquittal.

For the error in giving this charge, the judgment will have to be reversed.

The judgment is reversed, and the cause remanded for a new trial.

The clerk is directed to give the proper notice for the return of the prisoner.