GEORGE SHUFFLIN, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

Under the Revised Statutes, prior to the amendments of 1873 (chap. 644, Laws of 1873), the killing of a wife by her husband, with a premeditated design to effect death, was murder in the first degree, although done under the provocation of finding her in the act of adultery.

Under the law as it then stood, and as it now is, an intentional killing, under such circumstances, is murder; to reduce the offence to the grade of manslaughter it must have been committed without a design to effect death.

(Argued May 25, 1875; decided June 1, 1875.)

* 60 N. Y., 16.

ERROR to the General Term of the Supreme Court, in the first judicial department, to review judgment affirming judgment of the Court of Oyer and Terminer, in and for the city and county of New York, entered upon a verdict convicting plaintiff in error of the crime of murder in the second degree. (Reported below, 4 Hun, 16; 6 T. & C., 215.)

Plaintiff in error was indicted for the murder of his wife. He was tried April 16th, 1873. The testimony on the part of the prosecution was to the effect that on the 15th January, 1873, deceased was found in a tenement house, lying on the floor near the stove dead, nearly naked, covered with bruises and the scalp torn off and thrown backward from her forehead; there was considerable blood upon the floor and also upon the snow in the yard. The plaintiff in error and his mother testified, in substance, that he came into the house and went to the bedroom where his wife was, that as he reached the door a man ran out, that he found his wife on the bed with nothing on, that she was grossly intoxicated, that he dragged her out into the sitting room and laid her down by the stove; that the only violence he offered her was to slap her in the face with his open hand; that she got up and fell upon the stove twice, cutting herself, and bled profusely; that she got up and went out into the yard naked, and about an hour after he went out and found her lying on the snow; that he brought her in and laid her down by the stove, and she did not stir afterwards; that he went to bed and slept all night, and in the morning when he awoke he found her dead. Further facts appear in the opinion.

The court charged in substance, among other things, that to establish murder in the first degree there must have been, at the time of the killing, a premeditated design on the part of the slayer to effect the death of the person killed; that such design, however, might have been formed at the very moment the blows were dealt which accomplished the death. That the difference between murder and manslaughter was that in the former there must be an intent to kill, in manslaughter such an intent was not necessary. That the courts

look leniently upon a man who slays his wife when caught in the act of adultery, from the excitement consequent upon the discovery and `a momentary deprivation of control on his part; that is what is covered by the heat of passion when there is no intention to kill. He then submitted to the jury the question whether the prisoner committed the act complained of under such circumstances.

The counsel for the prisoner requested the court to charge: "That if the jury believed that the prisoner detected the deceased committing adultery, and thereupon instantly struck her, and from the effect of such blow she died, the killing can only be manslaughter." Also, "that the law regards adultery as so great a provocation, and makes such allowance for the passion which its discovery excites, that it absolutely reduces the grade of the offence of killing to manslaughter, and that in the lowest degree."

The court refused, except as already charged. The prisoner's counsel duly excepted.

*Charles W. Brooke* for the plaintiff in error. The intention to take life in this State constitutes the distinction between murder and manslaughter. (*People* v. *Johnson*, 1 Park. Cr., 29; *People* v. *Sheriff of Westchester*, id., 659; *People* v. *Austin*, id., 154.) Any killing without a design to effect death, unless it is justifiable or excusable, is manslaughter only. (*People* v. *Austin*, 1 Park. Cr., 154.) The killing by a husband of his wife or her paramour, on detecting them in the act of adultery, is such serious provocation as to reduce the offence from murder to manslaughter. (Whart. on Hom., 177, 178; *State* v. *Samuels*, 3 Jones' Law, 74.) If the intent to kill did not affirmatively appear, the offence would be manslaughter merely. (1 Hale P. C., 473; 1 East P. C., chap. 5, § 22, p. 237; *People* v. *Hammill*, 2 Park. Cr., 229; *Wilson* v. *People*, 4 id., 642.) In consideration of the circumstances under which the killing was done, plaintiff in error was guilty of manslaughter only, and that in the lowest degree. (Foster, 296; *State* v. *Samuels*, 3 Jones' Law, 74;

1 Hale P. C., 486; 1 Hawk. P. C., chap. 31, § 36; Whart. on Hom., 35, 177, 178; Whart. on Cr. L., § 987.) If the case comes within any degree of manslaughter it cannot be deemed murder, even if accompanied with some of the circumstances which make up that crime. (*People* v. *Johnson*, 1 Park. Cr., 291; *Darrey* v. *People*, 10 N. Y., 157, 161, 162; *People* v. *Johnson*, 1 Park. Cr., 296.)

*Benj. K. Phelps*, district attorney, for the defendants in error. Under the Revised Statutes, prior to chapter 644, Laws of 1873, no intentional killing could be manslaughter. (*People* v. *Austin*, 1 Park. Cr., 154; *People* v. *Clark*, 7 N. Y., 385; *Wilson* v. *People*, 4 Park. Cr., 619.)

RAPALLO, J. The judge in charging the jury, instructed them explicitly as to the distinction between murder and manslaughter. That in murder there must be an intent to kill, and that to constitute manslaughter it was not necessary that there should be such intent. He further instructed them, that the courts looked leniently upon a man who slays his wife, when caught in the act of adultery, from the excitement consequent upon the discovery and a momentary deprivation of control on his part; that that was what was covered by the "heat of passion" when there was no intention to kill, as used in the statutes defining manslaughter. He then submitted to the jury to determine whether they believed the statement which the prisoner made on the subject of the difficulty with his wife, and the circumstances attending it. Whether they believed from the evidence that he caught her in the act of committing adultery, or that the circumstances surrounding the woman justified him in concluding that she was committing adultery, and whether he was under the excitement and in the heat of passion which that discovery would be likely to produce, and did the act under it. The clear purport of the charge was, that if the jury found that the prisoner killed his wife under these circumstances, and without a premeditated design to

effect her death, the offence would be manslaughter in some of its degrees.

This, we think, was a correct exposition of the law, and fully covered the theory of the defence. No exception was taken by the prisoner's counsel to the charge as delivered, but he made two requests for a further charge, and the refusals to charge as thus requested present the only material exceptions in the case. The first request was to charge, "that if the jury believe that the prisoner detected the deceased committing adultery, and thereupon instantly struck her, and from the effect of such blow she died, the killing can only be manslaughter." This the court refused, except as already charged.

The charge as previously given embraced the proposition requested, with the qualifications only that the killing was done under the excitement and heat of passion, produced by the discovery, and not with intent to kill. We do not think the prisoner was entitled to have the charge repeated without those qualifications. Furthermore, we agree with the General Term in the opinion that the evidence did not present circumstances to which the charge requested was applicable, but was entirely inconsistent with the hypothesis contained in the request — that is, that the prisoner instantly struck the deceased, and that from the effect of such blow she died. He insisted in his testimony — and in this he was corroborated by his mother, who was the only witness present at the time — that when he discovered his wife in the bed-room, and the man who was with her passed out, he dragged her into the sitting-room and there slapped her on the side of the face with his open hand, and that was all the violence he inflicted; that she was at the time so grossly intoxicated that she could not stand, and in passing around the stove she fell upon it; that she tried to get up and fell again upon the stove; that he then laid her down by the stove; she was in a nude condition. This occurred between nine and ten o'clock at night. That she afterwards got up and went out into the yard naked; it was a cold night in January; that

he, the prisoner, remained sitting by the stove about an hour after she went out, and he then went out after her and found her lying naked in the snow ; that he brought her in and laid her by the stove; that he then had more clothes put over her and went to bed ; that in the morning she was found dead.    He was positive that the only violence he inflicted on her was the slap in the face.

When found in the morning, by the police officers and others, she was lying by the stove dead.    There were various bruises on her body ; her scalp was torn off and thrown backwards from her forehead to the crown of her head, uncovering the anterior temporal arteries, which were injured and bleeding ; she had a cut over the eyebrow and on the lip, and there was a large quantity of blood upon the floor and on the cloth or pillows upon which the head rested ; there was also blood upon the snow in the yard.    A keeper of a drinking saloon testified that about nine. o'clock in the morning the prisoner came to his place to drink and told him that his wife was dead, that the night before he had come in, after taking some drinks, and a man ran out of his bed-room, and he commenced licking his wife; that he licked her pretty hard in the room and outside in the yard, then threw water on her and got her into the room again and licked her on the floor and then went to bed to sleep.    He then took the witness into the house and exhibited the body to him.    Another witness testified that the prisoner, when asked about the scalping, said that it must have been done by kicks.

From this reference to the evidence it appears that the question of fact before the jury was, whether the injuries which caused the death resulted from the deceased falling against the stove by reason of her intoxication, as claimed by the prisoner at the trial — in which case he would have been entitled to an acquittal — or whether they were caused by a series of acts of brutality, continued through the night. They could not have found that the death .resulted from the hasty blow struck by the prisoner at the beginning of the difficulty.    His own evidence entirely rejects that idea.    He

says that after he slapped her she turned away and then returned, and in passing around the stove fell upon it. Neither of the witnesses say that the slap threw her on the stove.

The second request to charge was, "that the law regards adultery as so great a provocation and makes such allowance for the passion which its discovery excites, that it *absolutely* reduces the grade of the offence of killing to manslaughter, and that in the lowest degree." This the judge refused, except as already charged.

Much of what has been said in reference to the first request is also applicable to this. The judge had already charged all that was required on the subject of the provocation of adultery. But the proposition as a general proposition of law, in the unqualified form in which it is presented by the request, cannot be sustained. In the first place, it does not confine the case to one of a sudden killing, immediately following discovery in the act. It might embrace one of a subsequent deliberate killing, out of jealousy or revenge. (Foster's Criminal Law, 296; *State* v. *Samuel*, 3 Jones' Law [N. C.], 74; *Rex* v. *Kelly*, 2 Car. & Kir, 814.) Secondly, it is far too strong in stating that the provocation *absolutely* reduces the grade of the offence. Whether it does or not, must depend upon the circumstances of each particular case. It is often stated in elementary books and in judicial opinions, in general terms, that if a man kill his wife or the adulterer in the act of adultery it is manslaughter. But this is not a proposition of universal application as matter of law, and, although practically the result indicated would generally follow, cases may be supposed where the crime would still be murder. It cannot be laid down as a rule of law that adultery gives a license to kill either of the offending parties without being guilty of murder. The language often found in the books is sustained by the report of *Manning's Case* in Sir T. Raymond's Reports (p. 212). "The jury found that Manning found the person killed committing adultery with his wife, in the very act, and flung a pointed stool at

him, and with the same killed him; and resolved by the whole court that this was but manslaughter; and Manning had his clergy at the bar and was burned in the hand; and the court directed the executioner to burn him gently, because there could not be greater provocation than this." But, in a more accurate report of the same case contained in Ventris (p. 158), under the title of *Maddy's Case*, it appears that the verdict was special; and that the jury also found that the prisoner had no previous malice toward the deceased, and this was an important consideration upon which the judgment turned. TWISDEN, who presided at the trial, said there was a case found before Justice JONES which was the same as this, except that it was found that the prisoner being informed of the adulterer's familiarity with his wife, said he would be revenged of him; and after, finding him in the act, killed him, which was held to be murder, which the court said might be so by reason of the former declaration of his intent.

The question in all these cases must necessarily be whether, as stated by BRADY, J., in his charge to the jury, the act was done with intent to kill or in the heat of passion engendered by the sudden discovery, and without intent to kill.

The proposition contained in the second request was defective in not negativing the intent to kill, and this omission is fatal to both requests. The killing of a human being with a premeditated design to effect death, even under the extreme provocation of finding him or her in the act of adultery, would, under the statute of this State as it stood at the time of the offence in this case, have been murder in the first degree, and, under the judicial construction which had been put upon that statute, it would have been sufficient if the intent were formed the instant before the killing. By the amendment of 1873, to constitute murder in the first degree the design must be not only premeditated but deliberate. If the killing is intentional, but not deliberate and premeditated, it is murder in the second degree. But, as the law then stood, and still stands, every killing of a human

being without the authority of the law was and is either murder in the first or second degree, or manslaughter, or excusable or justifiable homicide. (2 R. S., 656, § 4.) Every definition of manslaughter, except when the homicide is unnecessarily committed in resisting an attempt to commit felony, expressly excludes an intent to kill; and, therefore, to reduce the offence to that grade the proposition should have excluded such intent. Every definition of excusable homicide requires that the killing be by accident, or accident and misfortune, and excludes the idea of an intentional killing. The cases of justifiable homicide are defined, and do not include the case specified in the request. Adultery, though provocation of the gravest character, is still but provocation, it is not justification; and every intentional killing, however extreme the provocation, is and was, under our statute, murder, unless justified as provided in the statute.

For all these reasons, we are of opinion that the requests to charge were properly refused.

None of the other exceptions appear to us to require further attention than they have received in the opinion delivered at General Term. Although there are extenuating circumstances in the case, and a verdict of manslaughter might well have been rendered, there being very slight evidence of an intent to kill, we find no error of law requiring a reversal of the judgment.

Judgment affirmed.

All concur.

Judgment affirmed.