Henning v. The State.

Filed May 22, 1886.

---

No. 12,992.

## HENNING v. THE STATE.

CRIMINAL LAW.—*Selecting Grand Jury.*—*Record.*—*Recitals of Clerk.*—Recitals of the clerk, as to the manner in which the grand jury were selected, are not properly part of the record.

SAME.—*Indictment.*—*Return.*—*Arrest of Judgment.* — *Practice.* — Where the statements of the indictment, the endorsement on it, and the copies of the entries show that the grand jury were duly empanelled, and that the indictment was received by the court in open session, error in the selection of the grand jury is not available on a motion in arrest of judgment.

SAME.—*Plea in Abatement.*—Where the statements of the indictment and the record entries show that the indictment was returned into open court, errors or irregularities in the selection or empanelling of the grand jury are properly taken advantage of by a plea in abatement.

SAME.—*Murder.*—*Omission from Indictment of Words "Kill and Murder."*—Where the facts stated in the indictment show that a human being was purposely, wilfully and with premeditated malice shot by the defendant, and that a wound was inflicted from which death resulted, the offence of murder in the first degree is sufficiently charged, although the technical words "kill and murder" are not employed.

SAME.—*Pleading.*—*Conclusions.*—*General Rule.*—The general rule is that if the facts well pleaded supply grounds for the necessary legal conclusion, it will be made by the court, and the failure to state it will not, under the criminal code of this State, vitiate the indictment.

SAME.—*Separation of Jury.*—*Waiver of Objection.*—Where the defendant and his counsel, even in a capital case, have knowledge that the court has permitted the jury to separate during the progress of the trial and before the case is finally submitted to them, but no objection is made

until after verdict, the right to object will be deemed to have been waived.

SAME.—*Misconduct.*—Jurors who separate in obedience to the directions of the court, and under its instructions, are not guilty of misconduct.

SAME.—*Issue.—Manner of Joining.—Instruction.—Practice.*—The court should not, in its instructions, state to the jury the manner in which issue was joined, but where they are told that the defendant refused to plead, and that a plea of not guilty had been entered for him, a reversal is not authorized unless the substantial rights of the defendant are prejudiced.

SAME.—*Premeditation.—Instruction.*—It is proper for the court to instruct the jury as to what facts may be considered as evidence that a homicide was premeditated.

SAME.—*Murder.—Manslaughter.—Provocation.*—The unlawful taking of human life, when done purposely, is murder, unless reduced to manslaughter by a sufficient provocation. Mere passion is not enough; there must be an adequate provocation arousing the passion.

SAME.—*Infidelity of Betrothed.—Deliberation.*—Where one kills his betrothed, upon discovering her infidelity, but after time for deliberation and for passion to subside, he is guilty of murder.

SAME.—*Insanity.—Question for Jury.—Weight of Evidence.—Supreme Court.—Practice.*—Where the question of the defendant's mental condition is properly submitted to the jury, and there is evidence sustaining their verdict, the Supreme Court will not disturb it.

From the Montgomery Circuit Court.

*J. R. Courtney,* for appellant.

*F. T. Hord,* Attorney General, *F. M. Howard,* Prosecuting Attorney, and *W. B. Hord,* for the State.

ELLIOTT, J.—The appellant prosecutes this appeal from a judgment declaring him guilty of murder in the first degree, and adjudging that he suffer the penalty of death.

Relying upon recitals made by the clerk, the appellant's counsel assumes that the grand jury by whom the indictment was found were not legally selected, and that the record properly presents this question. This assumption can not be maintained. The indictment on its face asserts that the grand jury were duly empanelled, and the record shows that the indictment was returned into open court, and that a bench warrant for the arrest of the accused was ordered to issue. No objection was presented to the selection or empanelling of the

grand jury until after verdict, and then the objection now urged was presented by a general motion in arrest of judgment, but no specific reasons were assigned in support of this motion. The recitals of the clerk as to the manner in which the grand jury were selected are not properly part of the record; while the statements of the indictment, the endorsements on it, and the copies of the entries, are properly a part of the record of the proceedings and orders in the trial court. *Padgett v. State*, 103 Ind. 550; *Beard v. State*, 57 Ind. 8; *Clare v. State*, 68 Ind. 17; *Greene v. State*, 79 Ind 537. The record, therefore, shows that an indictment was found by a regularly empanelled grand jury, and that it was properly returned into open court, so that, on the face of the record, it appears that an indictment was legally found and returned against the accused. *Powers v. State*, 87 Ind. 144, and cases cited; *Stout v. State*, 93 Ind. 150; *Heath v. State*, 101 Ind. 512; *Epps v. State*, 102 Ind. 539.

Conceding, but not deciding, that there are some cases in which an error in the selection of the grand jury may be taken advantage of on a motion in arrest of judgment, it is quite clear that it can not be done in a case, where, as here, the record shows that the grand jury were duly empanelled and the indictment received by the court in open session. Where the statements of the indictment and the record entries show that the indictment was returned into open court, errors or irregularities in the selection or empanelling of the grand jury are properly taken advantage of by a plea in abatement. *Mathis v. State*, 94 Ind. 562; *Pointer v. State*, 89 Ind. 255; *Wills v. State*, 69 Ind. 286; *Miller v. State*, 69 Ind. 284; *Meiers v. State*, 56 Ind. 336; *Sater v. State*, 56 Ind. 378.

The indictment thus describes the offence with which the accused is charged: " That one John C. Henning, late of the said county, on the 24th day of October, A. D. 1885, at the county and State aforesaid, did then and there feloniously, purposely, wilfully and with premeditated malice assault, and did then and there feloniously, wilfully, purposely, and with

Henning v. The State.

premeditated malice, in a rude, insolent and angry manner, shoot off and discharge a dangerous and deadly weapon, commonly called a revolver, then and there loaded with gunpowder and leaden bullets, which he then and there in his hand had and held, at, against and into the body of one Charlotte Vollmer, then and there being, then, there and thereby feloniously, wilfully, purposely and with premeditated malice, in manner and form as aforesaid, giving her, the said Charlotte Vollmer, mortal wounds of which she then and there died." This indictment is not well drawn, and deserves criticism, but we think that it charges, although very clumsily, the accused with the crime of murder in the first degree.

The objection urged against it is that it does not contain the technical words "kill and murder."

We can not yield to the contention of counsel that the absence of these words renders the indictment bad. Our judgment is, that where the facts stated in the indictment show that a human being was purposely, wilfully and with premeditated malice, shot by the defendant, and that a wound was inflicted from which death resulted, the offence of murder in the first degree is sufficiently charged, although the technical words "kill and murder" are not employed. An indictment describing the offence in the manner indicated fully informs the accused of the charge preferred against him, affords him ample opportunity to know and meet the accusation, and hence no harm can possibly result to him from the omission of the technical words "kill and murder," which, at most, express a mere conclusion of law and assert no issuable fact. In the indictment before us the manner in which the shots were fired is specifically described, and it is averred that these shots did inflict wounds of which the wounded person died, and it seems quite clear that the facts pleaded warrant one conclusion and exclude every other, and that is, that the shots fired, wilfully and with premeditated malice, did kill and murder Charlotte Vollmer. The general rule is that if the facts well pleaded supply grounds for the nec-

essary legal conclusion, it will be made by the court, and the failure of the pleader to state it will not, under our criminal code, however it may have been at common law, vitiate the indictment.   The adjudged cases very fully support our conclusion that the indictment is not fatally defective.   *Chase* v. *State,* 50 Wis. 510; *State* v. *Stanley,* 33 Iowa, 526; *State* v. *O'Niel,* 23 Iowa, 272; *Evans* v. *People,* 12 Mich. 27; *People* v. *McDonald,* 9 Mich. 150; *Anderson* v. *State,* 5 Ark. 444; *West* v. *State,* 48 Ind. 483; *Dennis* v. *State,* 103 Ind. 142; 1 Bishop Crim.. Proc., section 335; 2 Bishop Crim. Proc., section 548.

The bill of exceptions recites that after the jury had been empanelled, the opening statement of the prosecution made, and several witnesses examined, the court announced that the trial would not proceed further on that day; thereupon the sheriff took the defendant out of the presence of the court; that his counsel followed him; that after they had left the court room the court of its own motion, without the knowledge of the defendant or his counsel, permitted the jury to separate until the following day and gave them the instructions required by statute; that the attention of the court was not called to the absence of the defendant and his counsel until nine o'clock of the following morning, and that, to use the language of the bill, " the facts herein above set out were made one of the grounds for a new trial."

The fourth reason for a new trial is in these words: " For error of law occurring on the trial in this, to wit:  That, on the 1st day of February, 1886, the same day being the 25th judicial day of said court, this trial in this cause, which resulted in a verdict of the jury assessing the death penalty, was begun, the jury had been chosen, empanelled and sworn to try this cause, the opening statement had been made by the prosecuting attorney, and a part of the evidence had been introduced on the part of the State, and the time having arrived at which the court desired to adjourn until the following morning, the defendant was by the sheriff conveyed back

to the jail of said county; that after the defendant had been taken out of court and to the jail, the court of its own motion, and in the absence of the defendant and his counsel, and without the knowledge or consent of the defendant and without the consent of either the defendant or his counsel, discharged the jury for the day and permitted them to separate until February 2d, 1886, at nine o'clock A. M., and the members of the jury did separate when so discharged and mingled in the crowds of people present in the court-room, on the streets and in the business houses, and breathed the atmosphere which had become impregnated and poisoned by the prejudice of said crowds, and heard whisperings of ill-will, hatred and malice against this defendant, and remarks, the purport of which were that this defendant ought to be hung, and that the said jury ought to assess the death penalty against him, by all of which defendant says he was prejudiced in said trial and failed to receive a fair one; that neither himself nor counsel was present to take exceptions to said action of the court, said defendant having as aforesaid been forcibly and violently by said sheriff conveyed away, and his counsel herein, John R. Courtney, having followed to consult him with reference to the facts in this case."

The appellant filed an affidavit asserting the truth of the matters stated above, and his counsel also filed an affidavit stating that the order of the court was made in his absence and in the absence of his client.

The statement of the motion that the defendant was forcibly and violently removed from the court-room, like many other statements contained in it, is in the form of a conclusion rather than in that of a substantive fact, so that little, if any, force can be given it; but if we could treat it as the statement of a fact, it could not prevail against the statement of the court as to what took place, since it is a familiar rule that where the court puts of record a statement of what occurred in its presence, it can not be overcome by the affidavit of a party. We do not, it is just to say, understand counsel

as attaching any importance to the general statement to which we have referred, and we shall give it none.

The appellant's counsel stoutly maintains that the court erred in permitting the jury to separate without the express consent of the appellant. This position is met by the State with two propositions:

*First.* The appellant, having knowledge of the ruling of the court, and interposing no objection until after verdict, waived his right to object.

*Second.* The court had a discretionary power to permit the jury to separate at any time during the progress of the trial prior to the time the case was finally submitted to them.

If the State is right upon the first proposition, the discussion of the second is unnecessary. The facts support the State's contention so far as respects the question of knowledge and opportunity to object, for it clearly appears that the separation of the jury was known to the accused and his counsel, and that the attention of the court was directed to it by them on the following morning. No ruling, however, was then asked of the court, but the cause was permitted to proceed to verdict without any intimation of dissatisfaction on the part of the defendant. The question for our decision is, what is the law upon these facts?

There is a case directly in point, that of *Polin* v. *State*, 14 Neb. 540, and if it correctly expresses the law the State has successfully maintained its position. In that case it was said: "The objection first appeared in the motion for a new trial, and came too late." At another place in the opinion it was said: "Parties litigant, even in criminal cases, must deal fairly by the court. They are not permitted to withhold information of matters transpiring in the progress of a trial, whether prejudicial or otherwise, and thus, without objection, permit it to proceed to a conclusion, and then take advantage of them. Generally, all objections not jurisdictional as to the subject of the litigation must be made at the first opportunity, or they are deemed to be waived. The rule in such

cases is, that a party shall not be permitted without objection to take the chances of a favorable result, and then, if disappointed, for the first time complain." Our own cases, proceeding upon this general principle, have repeatedly asserted that if a defendant in a criminal case, whether a capital case or not, fails to object and except at the earliest legal opportunity, he waives his right to afterwards assail the ruling. *Barlow* v. *State*, 2 Blackf. 114; *Hornberger* v. *State*, 5 Ind. 300; *Wheeler* v. *State*, 8 Ind. 113; *Leyner* v. *State*, 8 Ind. 490; *Mullinix* v. *State*, 10 Ind. 5; *Murray* v. *State*, 26 Ind. 141; *Stone* v. *State*, 42 Ind. 418; *Noe* v. *State*, 92 Ind. 92.

The principle that an accused may waive a right extends to the highest rights, even to those secured by the Constitution. *Shular* v. *State*, 105 Ind. 289; *Butler* v. *State*, 97 Ind. 378; *Veatch* v. *State*, 60 Ind. 291; *Boggs* v. *State*, 8 Ind. 463; *In re Staff*, 6 Crim. Law Mag. 828; Waiver of Constitutional Rights in Criminal Cases, 6 Crim. Law Mag. 182.

There are a great number of cases declaring that a defendant in a criminal case may waive objections by failing to insist upon them at the proper time in the trial court. *Pontius* v. *People*, 82 N. Y. 339; *State* v. *Benton*, 65 Iowa, 482; *Waite* v. *State*, 13 Texas App. 169; *People* v. *Cochran*, 61 Cal. 548; *Green* v. *State*, 59 Miss. 501; *State* v. *Furbeck*, 29 Kan. 532; *People* v. *Haley*, 48 Mich. 495; *People* v. *Reilly*, 53 Mich. 260; *Commonwealth* v. *Maher*, 4 Crim. Law. Mag. 411; *Firmeis* v. *State*, 61 Wis. 140.

It was said of the case of *Commonwealth* v. *Stowell*, 9 Met. 572, by this court, that "The court say, in reference to an erroneous ruling on the trial below, that as the defendant had an opportunity, but failed to avail himself of it on the trial, of making his objection, his acquiescence was a waiver, and estopped him to raise it afterwards." *McCorkle* v. *State*, 14 Ind. 39; *Preston* v. *Sandford*, 21 Ind. 156, see p. 158.

These authorities clearly establish the general doctrine that if a defendant has knowledge of a matter affecting his rights and fails to ask a ruling upon it, or if he fails to avail him-

self at the earliest opportunity of objections known to him, he can not afterwards successfully complain, and we can see no reason why the general principle should not apply to such a case as the one before us. There are, however, cases closely allied to the present which will present the question in a still clearer light, and of them we think it profitable to speak.

In *Cluck* v. *State*, 40 Ind. 263, one of the jurors took written notes of the evidence, and this was held to be an error, but it was also held that as the defendant knew what the juror was doing, and made no objection until the motion for a new trial, he could not make the error available. *Long* v. *State*, 95 Ind. 481.

A juror became ill and unable to comprehend the argument of counsel, but, although this fact was known to the defendant and his counsel, they proceeded with the case, and a verdict affixing the death penalty was returned. After verdict the appellant sought a new trial on the ground of the incapacity of the juror, but the court held that the new trial was rightly denied, for the reason that the defendant, by not objecting at the time, had waived his right to object after verdict. *Baxter* v. *People*, 3 Gilm. 368.

In the case of *Hunter* v. *State*, 43 Ga. 483, a capital case, the jury read a newspaper containing a denunciation of the conduct of one of the prisoner's counsel, and it was held that as this was done with the knowledge of counsel, an objection after verdict came too late.

A great number of cases declare that if it is known to the accused that improper papers are given to the jury, an objection after verdict will be too late to be of avail. Thompson & Merriam Juries, section 399, and note.

In *United States* v. *Gibert*, 2 Sumner, 19, it was held, in a very strongly reasoned opinion by Judge Story, that the separation or misconduct of the jury, known to the accused and not objected to until after verdict, would not entitle him to a new trial.

The subject which we are discussing received full consideration in a treatise on juries, and it was there said, in concluding a review of the authorities: "And in no case will a new trial be granted upon the ground that the juror misbehaved during the trial, unless it be made to appear affirmatively that the party complaining and his counsel did not know the fact before the jury retired to consider of their verdict." Thompson & Merriam Juries, section 456.

We have in our own reports many cases deciding that if objection is not made before verdict to the competency of the judge who presides at the trial, it will be of no avail. *Smurr* v. *State*, 105 Ind. 125; *Kennedy* v. *State*, 53 Ind. 542; *State, ex rel.*, v. *Murdock*, 86 Ind. 124; *Fassinow* v. *State*, 89 Ind. 235; *Case* v. *State*, 5 Ind. 1. These cases establish the principle which rules here, for they proceed upon the ground of waiver by failure to make a timely objection. But, more nearly resembling the present case, are those cases wherein it is held that the failure to examine jurors as to their competency or to challenge one whose incompetency is disclosed by the examination, is a waiver of the right to afterwards object. *Alexander* v. *Dunn*, 5 Ind. 122; *Romaine* v. *State*, 7 Ind. 63; *Bradford* v. *State*, 15 Ind. 347, see p. 353; *Croy* v. *State*, 32 Ind. 384; *Kingen* v. *State*, 46 Ind. 132; *Gillooley* v. *State*, 58 Ind. 182; *Achey* v. *State*, 64 Ind. 56; *Lockhart* v. *State*, 92 Ind. 452.

If a failure to object before accepting the jury is deemed a waiver, it must logically follow that failure to object where the disqualification or misconduct of a juror becomes known after the jury are sworn, must also be a waiver, for no reason can be adduced for holding that there is a waiver in the one case and not in the other. The principle is the same in both cases, and that is, that the objection must be presented at the earliest opportunity, or else it will be deemed waived. Of course, this principle can have no application where the ground of complaint, whether it be the action of the court or the misconduct of the jury, is not known to the accused until after

verdict, but it does apply where, as here, the action of the court and the conduct of the jurors are fully known to the defendant. The principle which we have here stated was applied in *Harrington* v. *State*, 76 Ind. 112. In that case a proceeding for contempt was instituted against a juror who had been guilty of misconduct, and the court told the defendant that if she would consent the jury would be discharged, but she declined to either consent or object, and it was held that an objection after verdict would not be entertained. In the course of the opinion it was said : "If there was any misconduct on the part of the juror, of which she could have complained, or if there was any irregularity in stopping the trial to investigate the charge of contempt against the juror, the appellant had the opportunity to avail herself of the objection. She had the option of having the jury discharged, but she would not consent to that." A like ruling was made in *Stewart* v. *State*, 15 Ohio St. 155.

There are some rights which a defendant in a criminal case can not waive, and many that he should not be asked to yield, but we do not think that the right to object to the separation of the jury before the case is finally submitted to them is one which he may not waive. The weight of modern authority is very decidedly in favor of the doctrine that the jury may, in the discretion of the court, be permitted to separate during the progress of the trial. Whart. Crim. Pl. and Pr., section 819; Thomp. & Merr. Juries, section 317.

If the matter is within the discretion of the court, then, of course, an accused can not, even though he should object, complain of the ruling of the court directing a separation. Our statute clearly implies that the court may permit the jury to separate during the progress of the trial, for it provides for the charge which the court shall give them in the event that they are permitted to separate. It is quite obvious that if a separation had not been deemed proper, such a statute would not have been enacted. Our decisions, however, upon this subject are not entirely harmonious. In *Evans* v. *State*,

7 Ind. 271, the court quoted the statute, and said : " The separation of the jury is expressly permitted, during the trial and before the cause is finally submitted to them, by this statute, and, of course, they could not be kept in care of a sworn officer." The case cited was, however, criticised and partially overruled in *Anderson* v. *State*, 28 Ind. 22, and it was there held that it was error to permit a separation over the objection of the defendant.  A like ruling was made in *Quinn* v. *State*, 14 Ind. 589; but it was there said that " The court may permit such a separation with, but not against the consent of the defendant." These cases agree on one point, at least, that a separation of the jury during the trial is not error unless an objection is interposed.  It is not necessary for us to decide whether the rule declared in *Anderson* v. *State, supra*, and *Quinn* v. *State, supra*, is or is not the correct one, for all we need do is to decide that the error, conceding it to be one, is such as may be waived.  Upon this point there is entire harmony in our own cases, and, as we have seen, they are in this respect supported by the very decided weight of authority. The case of *Jarrell* v. *State*, 58 Ind. 293, goes much farther than any of our other cases, for it was there held that the separation of the jury without objection, after the case had been finally submitted to them, was not error.  Dr. Wharton makes, and with much reason, a distinction between the separation of the jury before the cause is finally submitted to them and a separation during the progress of the trial.  He thus concludes his review of the authorities :  " Hence it is that the weight of authority is that the defendant, even in capital cases, can legalize the separation of the jury during the recesses of the court, down to the period when the case is given them for deliberation by the charge of the court." Whart. Crim. Pl. and Pr., section 733.

There are authorities to the effect that where a juror is shown to be disqualified, the court may discharge the jury over the defendant's objection.  *State* v. *Allen*, 46 Conn. 531. There is, however, a diversity of opinion upon this subject.

In our own case of *Adams* v. *State*, 99 Ind. 244, it was held that if, after the jury is empanelled, it is disclosed that one of the jurors is incompetent, it is error for the court to discharge the jury, and the defendant can not be tried a second time.    In the course of the opinion it was said: "In all such proceedings a failure to object is construed as implying consent," and that rule applies here with much force.    If the defendant discover that a juror has become disqualified, or has misconducted himself, he may, upon proper request, undoubtedly secure a discharge of the jury, but in securing this right he does not become entitled to a release from the charge preferred against him.    This rule is in harmony with that declared in those cases which hold that where a defendant takes a new trial the former verdict or judgment is no bar to a second trial.    The cases go very far upon this point, for they hold that this is the rule, although the defendant may have been acquitted of the higher offence charged in the indictment.    *Veatch* v. *State*, 60 Ind. 291; *Sanders* v. *State*, 85 Ind. 318, see p. 332; *Butler* v. *State*, 97 Ind. 378, see p. 383.

If the court can grant a new trial after verdict because of the misconduct of jurors, it is quite clear that it may discharge the jury in the proper case without waiting for a verdict, when asked by the accused.    It would be useless to proceed with the trial in a case where it became evident that no valid verdict could be reached, and the jury may in such a case be discharged without releasing the accused.    Suppose, for example, that after the trial had proceeded for a day it should come to the knowledge of the court that one of the jurors was insane; surely the court would not be bound to proceed with the trial and take a verdict which must inevitably be set aside on the demand of the accused.    It is, however, unnecessary to discuss the question, as it is settled by the adjudged cases.    Mr. Bishop says: "If a juror so conducts that no verdict can be rendered,—as, if he escapes before the verdict is reached,—this does not, like a wrongful

discharge of the jury by the judge, entitle the prisoner to go free, or protect him from a second jeopardy." 1 Bishop Crim. Law, 1038. At another place this author says: " If, after the trial has commenced, a juror is found not to have been sufficiently sworn, or to be insane, or not of the panel, he may be discharged, or the error may be otherwise corrected, without entitling the prisoner to go free." 1 Bishop Crim. Law, section 1039. It was, therefore, within the power of the accused to have secured a new jury upon request, if it was true that the jurors selected had been guilty of such misconduct as would have vitiated the verdict, but as he made no request to have the jury discharged, and, without objection, suffered the trial to proceed, he must be held to have waived all objections.

It is assumed by counsel that the jury were guilty of misconduct, but this assumption can not be made good. The jury did nothing wrong. Jurors who separate in obedience to the directions of the court and under its instructions are not guilty of misconduct. But if it were granted that they were, still, as the facts were fully known to the appellant, he must be deemed to have waived all objections. We can not, however, treat the case as one of misconduct on the part of the jury. It was not so treated by the appellant's counsel. It is not alleged as a reason for a new trial that the jury were guilty of misconduct, for the reason assigned is, that error of law occurred at the trial in permitting the jury to separate. As the appellant has not assigned the misconduct of the jury as a cause for a new trial, we have no authority to so treat it. We can not add a new reason to those assigned, and that assigned presents the action of the court, and not the conduct of the members of the jury. The doctrine of waiver which we have discussed therefore applies in all its force. *Stout* v. *State,* 90 Ind. 1; *Pemberton* v. *State,* 85 Ind. 507.

The court, in one of its instructions, informed the jury that the defendant had declined to plead, and that for this reason

a plea of not guilty was entered for him. It is the better practice in all cases not to state to the jury the manner in which issue was joined, and the course pursued in this case is not a commendable one, but the error, if it was one, is not such as will authorize a reversal, as it did not prejudice the substantial rights of the appellant. Our statute expressly forbids us from reversing a judgment, unless it affirmatively appears that substantial injury was done the appellant by the ruling of the court. *Wood* v. *State*, 92 Ind. 269; *Epps* v. *State, supra; Graeter* v. *State*, 105 Ind. 271; *Brown* v. *State*, 105 Ind. 385.

The ninth instruction does not, as counsel asserts, assume that facts have been proved, but it informs the jury what facts are evidence of malice and premeditation. It is proper for the court to inform the jury what facts may be considered as evidence that a homicide was premeditated. *Boyle* v. *State*, 105 Ind. 469.

The twelfth instruction is as follows: " If the killing be purposely and unlawfully done, without premeditation and without malice, express or implied, but voluntarily, upon a sudden heat and under a sufficient provocation, the crime is manslaughter." We can not perceive that the appellant has, under the evidence in this case, any just reason to complain of this instruction, for it shows that the killing of Charlotte Vollmer was done after many days of premeditation. There was no sudden heat, but there was a settled and deliberate purpose, formed after the passion of anger, if, indeed, there was any, had ample time to cool. But we are not inclined to assent to the view of counsel, who says of this instruction : " There is no such thing as the unlawful taking of life under sufficient provocation." We understand the law to be perfectly well settled that an unlawful taking of human life, when done purposely, is murder, unless there is a sufficient provocation. It is the provocation that reduces the crime to the grade of manslaughter. The provocation must be a sufficient one to engender passion, for without provocation the crime is murder,

and the provocation must be a sufficient one; otherwise the passion will not mitigate the offence. There are many cases declaring that passion alone is not enough, but that there must be an adequate provocation arousing the passion. *Boyle* v. *State, supra; Murphy* v. *State,* 31 Ind. 511; *People* v. *Turley,* 50 Cal. 469; 2 Bishop Crim. Law, sections 701, 704.

The fallacy of counsel's argument upon this point is that he confounds cause with provocation, whereas there is an essential difference in the meaning of the two words.

The thirteenth instruction is not very happily worded, and, perhaps, is not free from defects, but as applied to the facts of this case it is not erroneous in any material particular. It directs the jury, in substance, that the refusal of a person to carry out a marriage contract, or a suspicion on the part of the accused that the deceased, being his betrothed, was indulging in sexual intercourse with other men, or a detection by the accused of the deceased in an act of illicit sexual intercourse, will not constitute such a provocation as will reduce the killing from murder to manslaughter. We think it abundantly settled that no man can deliberately take a woman's life, even though she is his betrothed, because he believes that she is false to him, and if he does slay her, after time for deliberation, he is guilty of murder in the first degree. If upon first discovering her infidelity he slays her, then, possibly, the killing might be reduced to manslaughter, but it is nothing less than murder, when after ample time for passion to subside, he deliberately kills her. This was so here. There was ample time for passion to subside, and there was premeditation, followed by a deliberate killing. There was no sudden passion, for there was a fixed and sullen purpose, deliberately resolved upon and executed in cold blood. Graver provocation by far than that which the appellant alleges that he had has been held not to reduce the crime from murder to manslaughter, where there was time for passion to subside. The law is merciful where a sudden

heat arising from an adequate provocation impels a man to take human life, but, where there is time for deliberation, and where there is a purpose to kill, deliberately conceived and executed, the law refuses to mitigate the offence and holds it to be murder. *Sawyer* v. *State*, 35 Ind. 80; *State* v. *Samuel*, 3 Jones (N. C.), 74; *State* v. *John*, 8 Ired. 330; *Shufflin* v. *People*, 62 N. Y. 229 (20 Am. R. 483); 2 Bishop Crim. Law, sections 708, 711; 1 Wharton Crim. Law, sections 460, 461.

It is asserted that the evidence does not show that the deceased was slain in the manner described in the indictment. It is perhaps true that there is no positive evidence describing the precise manner in which she was killed, but the circumstances proved show, beyond the possibility of doubt, that she was slain by leaden bullets discharged from a pistol purposely fired at her by the accused, and circumstantial evidence of this potent character is as effective as direct testimony can possibly be.

The evidence is as strong against the accused as evidence can be upon every material point, and no one can study it without reaching the undoubting conviction that he was guilty of a wilful murder, deliberately premeditated and executed.

Judgment affirmed.

Filed May 11, 1886.

## On Petition for a Rehearing.

ELLIOTT, J.—The counsel for appellant petitions for a rehearing, but does not ask us to review any of the questions discussed and decided by us. We are now asked to discuss the questions presented by the evidence touching the alleged insanity of the appellant. The request is thus expressed: "The appellant respectfully petitions the court for a rehearing of this cause for the reason that the court, in the opinion and decision rendered, failed to pass upon the question of the insanity of appellant as raised in the record and discussed in the briefs. It is true that the opinion speaks as to the homi-

cide having been 'deliberately planned and executed,' but such deliberation is not inconsistent with a diseased condition of mind. Lunatics are sometimes deliberate and often cunning." Counsel is correct in saying that we did not discuss the evidence bearing upon the question of appellant's insanity, for we devoted our attention to the important and controlling questions in the case, so ably and vigorously presented by counsel, which questions we conceived to be the decisive ones, demanding express notice. We did not, however, overlook the evidence upon the question of the defendant's mental condition—that was studied with the other evidence—but we thought when the original opinion was decided upon, and we still think, that the question of the defendant's mental condition was so peculiarly one of fact for the jury, that, under repeated decisions of this court, we could not interfere with the decision of the jury, and that it was unnecessary to expressly announce this conclusion. We have again read the evidence, and can see no reason to change our opinion. The question of the defendant's mental condition was properly submitted to the jury, and as there is evidence satisfactorily sustaining their verdict we can not disturb it. Our duty is to ascertain whether the verdict is legally sustained by competent evidence, and we can not, under long settled rules, do otherwise than sustain the finding of the jury. We agree with counsel that insane persons may sometimes act deliberately, but in this case there is evidence tending to show that the deliberate acts were those of a sane man, and we can not say that the jury did not do right in so regarding them.

Petition overruled.

Filed May 22, 1886.