## COURT OF APPEALS,

### Dec. 31, 1912.

# THE PEOPLE v. JOSEPH GARFALO.

### (207 N. Y. 141.)

(1.) MURDER.

The defendant was indicted and tried for the killing of his wife and the jury found a verdict of murder in the first degree, as charged in the indictment. *Held*, that the crime was committed under circumstances which leave no reasonable doubt as to the killing having been the deliberate, intentional act of the defendant.

(2.) SAME—VOLUNTARY STATEMENTS MADE BY DEFENDANT, WHEN UNDER ARREST ARE ADMISSIBLE AGAINST HIM.

Where the evidence is clear that a defendant's statements were voluntary and without any influence of threats or promises being brought to bear, it is of no consequence that he was under arrest, and any statements to, or in the presence of, the officers, which were voluntary on his part, are admissible against him.

(3.) SAME—WHEN NOT ERROR TO EXCLUDE PROVOCATORY STATEMENTS MADE TO DEFENDANT BEFORE THE CRIME.

It was not error to exclude evidence of statements made to the defendant by various persons at times prior to the homicide, in relation to the infidelity of his wife where the evidence shows that the homicidal act was committed, not in the heat of an over-mastering passion, aroused by some discovered act of infidelity of his wife, but coolly and deliberately.

(4.) SAME—INSANITY AS DEFENSE—PROSECUTION MAY SHOW, IN REBUT-TAL, BY OPINIONS OF PHYSICIANS THAT DEFENDANT WAS SANE.

It was not error to allow the People, in rebuttal, to show the sanity of the defendant through the opinions of physicians, since it is in the discretion of the court to permit such evidence in rebuttal.

APPEAL from a judgment of the Supreme Court, rendered January 31, 1912. at a Trial Term for the county of Suffolk,

upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*John R. Vunk,* for appellant. The court erred in allowing the People to show, by experts, their opinion of the sanity of the defendant on Monday, the tenth, as such evidence was not in rebuttal of any by the defendant. (Marshall v. Davies, 78 N. Y. 414.)

*Ralph C. Greene, District Attorney (George H. Furman* of counsel), for respondent.

GRAY, J. The defendant was indicted and tried for the killing of his wife and the jury found a verdict of murder in the first degree, as charged in the indictment. The crime was committed under circumstances, which could leave no reasonable doubt in the mind as to the killing having been the deliberate, intentional, act of the defendant. The evidence shows that the married life of the defendant and the deceased, both being Italians, had not been happy for some years and, about two weeks before the commission of the crime, they had separated. Early in the morning of July 10th, 1911, they met at the house of a neighbor, in the village of Hagerman, on Long Island. There were present, besides the defendant and his wife, their three children and two women; one of whom witnessed the subsequent occurrence of the killing. All were eating breakfast together and the evidence disclosed no incident of a provocative nature. The deceased asked Rosie Shinego, one of the two women referred to, to go with her to Patchogue; saying that she was going to get a separation, or divorce, and wanted her to interpret. The defendant, hearing this, appeared to acquiesce; saying to witness " yes, go to Patchogue and we will pay you.". After leaving the house, the defendant, his wife and children,

and Rosie, stopped at the latter's house for a brief period of time and, thence, proceeded to walk to the railroad station. When they first started out, the defendant and his wife talked together. She charged him with maltreating her and with having threatened her life, and said she wanted a divorce, or a separation. He said " all right." According to the witness Rosie, there was no further conversation between them, until they reached the railroad track; when the defendant said to her " you still got it in your mind to go to Patchogue? " and she answered " how many times am I going to tell you? yes." They were, then, walking along the road. The deceased was carrying her infant in her arms and the two other children were walking beside her. Behind them was the defendant, who was walking with the witness Rosie. She says that the defendant took a small axe from his pocket and, taking two big steps forward, said " you ain't going no more " and struck his wife upon the head with it several times, until she fell to the ground with the baby. Striking her again, when upon the ground, he ran away. The autopsy showed that she had received five cuts from the axe, upon the back and the side of her head and upon her face. She was carried into a house and the next day died from the wounds received. There is no dispute as to the occurrence, which has been briefly described. The defendant did not testify and he offered no evidence in contradiction of the story of Rosie Shinego, the sole eye witness. The evidence covering the events of the preceding two days showed 'the parties to have seen more or less of each other at a neighbor's house and it does not appear that anything occurred between them of an exciting nature, beyond the discussion of her intention to get a divorce. Without dwelling upon the evidence, we are convinced that the case was one of a deliberate killing by the defendant of his wife; committed in a brutal manner and without a fact to lessen the gravity of the offense.

Of the objections, which the appellant makes to the affirmance of the judgment of conviction, but three need be noticed. It is objected that certain statements made by the defendant, upon his arrest, and testified to by witnesses were inadmissible. The defendant was arrested, shortly after the attack upon his wife, and was brought into the house, where she lay. A representative of the district attorney and two officers were present, with other persons. A witness was allowed, over the defendant's objection, to testify to statements by the defendant, while in the room, and that he said, among other things, " I am glad of the job I make. If she lives some one else will support her, but if she dies, it is all right; nobody else will have to support her." Subsequently, others were asked to state what the defendant said upon that occasion; but, curiously enough, the counsel for the People and the trial judge seemed to agree, in view of its appearing that the representative of the district attorney had not previously cautioned the defendant before making any statement, that the evidence was inadmissible and should be excluded. Section 395 of the Code of Criminal Procedure requires the exclusion of a defendant's confessions, when under the influence of fear produced by threats. The evidence is clear that the defendant's statements were voluntary and without any influence of threats, or promises, being brought to bear. It is of no consequence that he was under arrest and any statements to, or in the presence of, the officers, being voluntary on his part, were clearly admissible. This has long been the settled rule. (Murphy v. People, 63 N. Y. 590; People v. Chapleau, 121 id. 266; People v. Kennedy, 159 id. 346, 14 N. Y. Crim. 114.)

It is argued that it was error to exclude evidence of statements made to the defendant by various persons, at times prior to the homicide, in relation to the infidelity of his wife. There was no error in the ruling. The evidence shows that the homicidal act was committed, not in the heat of an overmastering

passion, aroused by some discovered act of infidelity of his wife, but coolly and deliberately. No provocation was shown at all. At the time, and long previously, no particular excitement marked their intercourse, beyond what attended upon the discussion relative to her desire to separate from him. Whatever the defendant had heard during the past years and, even, within a week to anger him, there had been time for him to control. himself. As it was said in People v. Wood, (126 N. Y. 249, at p. 262), of the admissibility of a statement to a husband relating to his wife's adultery, " proof of this communication to the defendant and its nature, occurring as it did at least a week before the commission of the offense, would be inadmissible, for a week is a period much more than enough for the cooling time allowed by law." In Sanchez v. People, (22 N. Y. 147), it was held that the fact that information of the wife's infidelity had been imparted to the husband can only be proved, when it is shown that such information was given so near to the time of the commission of the crime that the court could see that the passions had not had time to subside. The theory upon which evidence of the wife's adultery is admitted is that the time of the husband's discovery of it is brought so near to the homicide as not to allow space for cooling. Adultery gives no license to kill either of the offending parties and if a man deliberately, after the lapse of time sufficient for his passion to subside, kills either, it is murder in the first degree, if the intention to take life is shown. (Shufflin v. People, 62 N. Y. 229; 1 Wharton Crim. Law, § 459.) Evidence of what occurred at, or about, the time of the homicidal act to put the defendant in a transport of passion would be admissible upon the question of the degree of the offense; but evidence of matters antecedently occurring to anger him is inadmissible to show some justification for a deliberate homicidal attack.

It is contended by the appellant that the court erred in allowing the People, in rebuttal, to show the sanity of the de-

fendant through the opinions of physicians. There was no error in the rulings. The evidence might have been given by the People in making their case; or they could rely on the presumption of sanity. The defendant's counsel, in his opening address, argued that it was for the jury to determine upon all the evidence whether, or not, the defendant was a sane man at the time of the commission of the offense. In view of such statements and with evidence relating to acts and circumstances in the defendant's life, the People were justified in proceeding, further; to show that he was sane. Generally, it is in the discretion of the court to permit such evidence in rebuttal and, under the circumstances disclosed, it was quite properly introduced to remove any doubt in the juror's minds upon the subject.

I advise the affirmance of the judgment of conviction.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment of conviction affirmed.