## McHargue *v.* State of Indiana.

### [No. 24,093.    Filed May 11, 1923.]

1. **Criminal Law.**—*Change of Venue.*—*Application by Defendant.*—In a prosecution for homicide after a general plea of not guilty and a special plea of insanity, a verified motion for a change of judge stating that affiant was counsel for defendant, that defendant was of unsound mind, and that affiant believed defendant could not have a fair and impartial trial before the regular judge, because of bias and prejudice the affiant swore existed, was insufficient since §2074 Burns 1914, Acts 1905 p. 584, §203 provides that said affidavit must be made by the defendant.    p. 207.

2. **Venue.**—*Change.*—*Application by Attorney or Agent.*—*Sufficiency.*—In an application for change of judge on account of bias or prejudice of the regular judge, under §422 Burns 1914 in civil actions, or §2074 Burns 1914, in criminal actions, the verification of the motion by agent or attorney of the party or the defendant is insufficient.    p. 207.

3. **Criminal Law.**—*Change of Venue.*—*Affidavit by Attorney.*—An affidavit for a change of venue for alleged bias and prejudice of the judge which was verified by the attorney for the defendant on the statement that the defendant was of unsound mind, was held insufficient, no attempt being made to show incapacity of the defendant to act for himself in such a matter.    p. 209.

4. **Homicide.**—*Instructions.*—*Measure of Proof.*—In a prosecution for homicide an instruction that if the jury "believe from the evidence * * * beyond a reasonable doubt that the defendant killed * * * and if at the very time of the killing the

defendant was of unsound mind or insane from any cause, he should be acquitted", etc., is erroneous because of the implied suggestions that the defendant's right to an acquittal depended upon the jury finding, beyond a reasonable doubt, that he was of unsound mind, or upon the jurors being satisfied, beyond a reasonable doubt that he was not guilty. p. 210.

5. CRIMINAL LAW.—*Instructions.*—*Inferences.*—*Province of Jury.* —An instruction that "the jury is not warranted in inferring that a man is insane from the mere fact of his committing a crime, or from the enormity of the crime, or from the mere apparent absence of motive for it," invades the province of the jury, as it withdraws from their consideration on the question of his insanity, evidence that apparently without any motive defendant had killed an unoffending fellow workman; it is for the jury to decide what inferences they will draw from the facts proved. p. 212.

6. CRIMINAL LAW.—*Homicide.*—*Instructions.*—*Insanity.*—Where in a prosecution for homicide defendant has pleaded not guilty and entered a special plea of insanity, an instruction which limits the defense to the promptings of a delusion narrows the defense too greatly, in view of the evidence which disclosed that the defendant was "insane," of "unsound mind," was afflicted with paranoia, and that he was recommended for discharge from the army on account of psychosis dementia praecox, paranoid type. p. 213.

7. EVIDENCE.—*Expert Witnesses.*—*Cross-examination.* — Hypothetical questions on cross-examination of an expert witness should be limited to his opinion upon matters of which there is some evidence, except as the trial court may, in its discretion, permit questions testing the knowledge and skill of the witness. p. 215.

8. EVIDENCE.—*Expert Witnesses.*—Within the facts upon which there is any evidence at all, when an expert witness has expressed an opinion in his direct examination based on facts assumed by the examiner to have been established by proof, or upon a hypothetical case put by such party, he may cross-examine for his opinion based upon any other set of facts assumed to have been proved by the evidence, or upon a hypothetical case. p. 215.

9. CRIMINAL LAW.—*Appeal.*—*Exclusion of Evidence.*—In the absence of any attempt by counsel to show that the excluded questions on cross-examination related to matters of which evidence was introduced at the trial, the appellate court must presume in favor of the trial court that they assumed facts outside the evidence. p. 215.

From Delaware Circuit Court; *William A. Thompson,* Judge.

Prosecution by State of Indiana against Hallett McHargue for murder in the first degree. From a judgment of conviction, the defendant appeals. *Reversed with instructions.*

*George W. Cromer* and *Montgomery & Montgomery,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

EWBANK, J.—Appellant was charged, by indictment, with murder in the first degree, and was convicted and sentenced to imprisonment for life. The only questions presented for review arise upon appellant's exception to the order overruling his motion for a new trial. Appellant entered a plea of not guilty, and a special plea that at the time of committing the act charged as a crime he was of unsound mind, and the state filed a reply of denial to the special plea. The undisputed evidence proved, without contradiction, that at the time and place charged in the indictment appellant came into a factory where he was employed, walked quietly to a point near where a fellow workman was engaged in oiling a machine, spoke the name of the other workman, and as he turned half around, shot him twice, and after he fell to the floor ran to where he lay and shot him four times more, killing him, and that all his victim said to him was "Don't do that." There was also evidence tending to prove that at that time, and for more than a year before, appellant was and had been a person of unsound mind, suffering from a mental disorder classified as "psychosis dementia praecox, paranoid type," and also evidence to the contrary, tending to

prove that he was of sound mind. The only defense attempted was on the ground of his alleged unsoundness of mind, and all the questions for our consideration grow out of rulings made by the trial court in relation to the issue joined on the special plea.

Before the trial commenced a verified motion for a change of judge was filed, stating that the affiant was "of counsel for defendant," and made the affi-

1. davit in his behalf, "that defendant is of unsound mind and by his counsel has entered a special plea in writing of unsoundness of mind in said cause," and that "affiant further swears that he believes defendant cannot receive a fair and impartial trial" before the judge before whom the cause is pending, "owing to the bias and prejudice of said judge against said defendant, as such defendant in said cause, which bias and prejudice of said judge against said defendant affiant swears now exists," and concluding with a prayer for a change of judge "to the end that said defendant may be tried by disinterested triers." Nothing was stated as to the character of defendant's alleged unsoundness of mind, or the degree to which he was incapacitated, except only that he "is of unsound mind." The motion was overruled, which ruling is first challenged. The statute provides that, "The defendant may show to the court by affidavit that he believes that he can not receive a fair trial, owing to the bias and prejudice of the judge against him, * * * and demand to be tried by disinterested triers." §2074 Burns 1914, Acts 1905 p. 584, §203.

This statute, in substantially the same language, has been in force in Indiana nearly a century, but we are not advised that any motion for a change of judge

2. in a criminal case has previously been made which did not recite that the defendant "believes

that he cannot receive a fair trial" before the judge named, "owing to the bias and prejudice" of said judge, to the existence of which bias and prejudice the defendant makes oath.

But repeatedly similar applications have been made in civil actions on motions verified by the attorney or agent of the party asking the change of judge, under a statute providing for a change of judge, "When either party shall make and file an affidavit of the bias, prejudice, or interest of the judge before whom the said cause is pending." §422, cl. 7, Burns 1914; §412 R. S. 1881.

And in every such case the verification by an attorney or agent has been held insufficient. *Stevens* v. *Burr* (1878), 61 Ind. 464; *Stevens* v. *Wagner* (1878), 64 Ind. 599; *Heshion* v. *Pressly* (1881), 80 Ind. 490, 492; *Firestone* v. *Hershberger* (1889), 121 Ind. 201, 202; *Wiltfong* v. *Schafer* (1889), 121 Ind. 264, 266, 267; *Fidelity, etc., Co.* v. *Carroll* (1917), 186 Ind. 633, 635.

Except as modified by defendant's alleged unsoundness of mind the same question arose in Illinois under a statute reading (in part) as follows: "When any defendant * * * shall fear that he will not receive a fair and impartial trial in the court in which the cause is pending, because the judge of the court is * * * prejudiced against him, the court shall award a change of venue upon the application of the defendant as hereinafter provided. * * * Every application for a change of venue shall be by petition setting forth the cause of the application and praying a change of venue, which petition shall be verified by the affidavit of the defendant." R. S. Ill. 1845 p. 528, §5; 2 Hurds' R. S. Ill. 1921, ch. 146, §§18, 20, p. 3229. In affirming the judgment in a criminal case the Supreme Court of Illinois said: "When this case was called for trial, de-

fendant entered a motion for a change of venue, on account of the prejudice of the judge presiding.

One objection is fatal to the application. The petition upon which the motion was based was neither signed nor sworn to by defendant. There is no statute that authorizes any other person to petition for a change of venue on behalf of defendant, and the application was properly denied." *McCauley* v. *People* (1878), 88 Ill. 578.

Counsel urge the necessity of permitting some one to act for the defendant, because of his alleged unsoundness of mind. But no attempt was made to state facts in the affidavit showing incapacity in any other than a legal sense. The defendant has not been adjudged of unsound mind, and even if he had been so adjudged he is not shown to have been incapable of acting on his own behalf in some kinds of court proceedings. *Cuneo* v. *Bessoni* (1878), 63 Ind. 524, 526; *Berry* v. *Berry* (1897), 147 Ind. 176, 46 N. E. 470; *Chase* v. *Chase* (1904), 163 Ind. 178, 184, 189, 71 N. E. 485.

He had entered a general plea of not guilty, as well as a special plea that at the time when the acts for which he was on trial were done, eight months before, he was of unsound mind. And if we were permitted to consult the evidence in order to interpret the general statement that he was of unsound mind, it would appear without dispute that he had been earning a living, managing his own affairs, and occasionally writing letters, without recent challenge of his ability in those matters, up to the time of the killing. There was no suggestion from any source that his alleged mental unsoundness was in the nature of idiocy.

As to whether complete incapacity, if shown, would make any difference in his right to act by attorney in

this matter we express no opinion. No error was committed in overruling the motion for a change of venue from the judge.

It is complained that each of two instructions told the jury, in effect, that if they believed from the evidence, beyond a reasonable doubt, that the defendant was of unsound mind at the time of the killing, or that he was not guilty, he should be acquitted, and thereby implied that no less certain proof of his insanity would entitle him to an acquittal. The instructions read as follows (our italics) :

"18. If you shall believe from the evidence in this case beyond a reasonable doubt that the defendant killed one George Kling on the 23d day of December, 1920, in manner and form as charged in the indictment, *and if at the very time of the killing, the defendant was of unsound mind or insane from any cause, he should be acquitted.* In this connection, however, the court instructs you that, although there may have been some mental derangement on the part of the defendant at said time, still if you should find that defendant at the time of said killing had sufficient mental capacity to know and distinguish right from wrong and also sufficient mental capacity to adequately comprehend the nature and consequences of his act, and a mind sufficient to deliberate and premeditate and form an intent and purpose to kill and had unimpaired will power sufficient to control any impulse he may have had to commit crime, he would be criminally liable for said act, and is not entitled to acquittal on the ground of mental incapacity, or unsoundness of mind."

"26½. The duty of counsel and of the court has now been performed. The counsel for the state and the defendant have argued ably to you the questions involved in this case. The court has endeavored to rightfully advise you in regard to the law of the case and there

confronts you now the final and important duty of pro-
nouncing upon the guilt or innocence of the defendant.
I submit this case to you with confidence that you will
faithfully and correctly discharge the grave duty now
resting upon you.

"You will bear in mind that the liberty of the accused
should not be trifled with or taken by careless and in-
considerate judgment, *but if after a careful considera-
tion of the law and the evidence in the case you are
satisfied beyond a reasonable doubt that the defendant
is not guilty you should return your verdict accordingly;*
but if, on the other hand, after a careful consideration
of all the law and all the evidence in the case, including
evidence as to the defendant's sanity, you are satisfied
beyond a reasonable doubt that the defendant is guilty,
you should return your verdict accordingly. Duty de-
mands it and the law requires it. You must be just to
the defendant and equally just to the state as manly
upright men charged with the responsible duty of assist-
ing the court in the administration of justice. You will
put aside all sympathy and sentiment, or consideration
of public approval or disapproval and look steadily and
alone to the evidence in the case and return such verdict
as is warranted."

The implied suggestions that the defendants' right to
a verdict of acquittal depended upon the jury finding,
beyond a reasonable doubt, that he was of unsound
mind or insane from any cause, or upon the jurors being
satisfied, beyond a reasonable doubt, that he was not
guilty, did not state the law correctly. *Plummer* v.
*State* (1893), 135 Ind. 308, 321, 34 N. E. 968.

"The legal presumption of sanity simply dispenses
with proof on that subject in the first instance on the
part of the State. When, however, the defendant's evi-
dence has created a doubt on this point, the burden falls
upon the State of proving his sanity." *Bradley* v.

*State* (1870), 31 Ind. 492, 506; *Walters* v. *State* (1915), 183 Ind. 178, 108 N. E. 583.

"The evidence of appellant's insanity need not predominate in weight over that going to show his sanity, if the jury found it sufficient to raise a reasonable doubt of his sanity, the law requires an acquittal." *Fritz* v. *State* (1912), 178 Ind. 463, 467, 99 N. E. 727, and authorities cited.

"A defendant is presumed to be innocent until the contrary is shown. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted." §2137 Burns 1914, Acts 1905 p. 584, §261.

Whether these two instructions are also erroneous in other particulars has not been considered and is not decided.

The trial court gave an instruction that "the jury is not warranted in inferring that a man is insane from the mere fact of his committing a crime, or from the enormity of the crime, or from the mere apparent absence of motive for it." This instruction invaded the province of the jury. In effect, it withdrew from consideration by the jury on the question of defendant's alleged insanity all evidence to the effect that apparently without any motive he had deliberately shot and killed an inoffensive fellow workman, and required them to judge of his sanity as if in killing his victim he had behaved in all he did like a rational person. It is for the jury to decide what inferences they will draw from the facts proved, unhampered by a direction that they shall or shall not draw a particular inference. Art. 1, §19, Constitution; *Burrows* v. *State* (1894), 137 Ind. 474, 477, 45 Am. St. 210; *Sutherlin* v. *State* (1897), 148 Ind. 695, 700, 701, 702, 48 N. E. 246.

As was indicated above, in addition to evidence that defendant had certain delusions, there was evidence

tending to prove that he was "insane;" that he was "of unsound mind;" that he was afflicted with "paranoia;" that a person so afflicted sometimes "is dominated through some fear or imperative idea that takes possession of him and deprives him of his knowledge and will power to restrain himself from actions he may know are wrong;" that while in the army he was "recommended for discharge on account of psychosis dementia praecox, paranoid type;" and that the army surgeons certified that he "cannot be released without danger to self or others;" but that after he was discharged from the army he was permitted to go at large.  The plea that at the time of committing the act charged he was of unsound mind was in the most general terms, and there was no other admission of record as to the character of his ailment.  The court gave an instruction which began with the statement that "counsel for defendant admit that defendant killed Kling as charged in the indictment, but deny defendant's criminal liability, because at the time of the killing defendant was laboring under, and prompted to the act by, a delusion—that is the defense made for the defendant here."  And it proceeded to instruct that insane delusions may operate as an excuse for a criminal act only when they are such that if the facts about which such delusions exist were true they would excuse the killing on the ground of self-defense, and that neither of certain delusions which witnesses testified the defendant had would afford any "excuse or justification" for the homicide in this case, because neither of them was a delusion which induced defendant to believe that he was in imminent danger of death or great bodily harm from which he could escape only by killing Kling. This instruction was erroneous for several reasons. But it is enough to note that there had been no binding admission that defendant was of sound mind and unim-

paired will power, except as he had delusions which induced him erroneously to believe that certain things were true which did not actually exist, for which reason instructions as to the effect of an unfounded belief or "delusion," as excusing the criminal act of a person otherwise sane, did not cover the issue on trial. And there was no attempt in the instruction to limit its application to a state of facts to be found by the jury upon a submission to them of the question whether or not defendant was of sound mind and unimpaired will power except as he was under a delusion concerning the existence of certain facts. Passing over other defects in the instruction, it unduly limited the scope of the issue submitted for trial, and invaded the province of the jury to determine the issue of guilt or innocence.

After an attorney for the state had propounded to a physician called as an expert witness a hypothetical question, reciting facts assumed to have been established by the evidence, and he had testified that upon those facts he would say that defendant was not of unsound mind, or that defendant had a lucid interval at the time of the killing, counsel for the defendant, on cross-examination, asked him a hypothetical question reciting certain assumed facts and inferences, some of which had not been mentioned in the question on behalf of the state, and asked whether, if what was so stated were true, the witness would deem defendant afflicted with dementia praecox of the paranoid type. To such a question asked of one expert witness an objection for which no reason is shown to have been stated was sustained without any suggestion by the court as to the reason for such ruling.

An objection to a similar question asked of another expert witness is shown to have been "sustained for the reason that this hypothetical question includes in it

several improper assumptions." What those improper assumptions were has not been pointed out to us, but neither has counsel for appellant referred us to any evidence of the facts stated in the excluded questions, further than to set out a narrative recital of all the evidence, covering seventy-five closely printed pages of his brief.

Hypothetical questions on cross-examination of an expert witness should be limited to taking his opinion upon matters of which there is some evidence, at
7. least, except as the trial court, in its discretion, may permit questioning to test the knowledge and skill of the witness.

But within the facts of which there is any evidence at all, when an expert witness has expressed an opinion based on facts assumed by the party introducing
8. him to have been established by proof or upon a hypothetical case put by such party, the other party may cross-examine him by taking his opinion based upon any other set of facts assumed to have been proved by the evidence, or upon a hypothetical case put by the cross-questioner. *Conway* v. *State* (1889), 118 Ind. 482, 490, 21 N. E. 285; *Davis* v. *State* (1871), 35 Ind. 496, 498, 9 Am. Rep. 760; *Guetig* v. *State* (1879), 66 Ind. 94, 104, 32 Am. Rep. 99; *Goodwin* v. *State* (1884), 96 Ind. 550, 555; *Grubb* v. *State* (1889), 117 Ind. 277, 284, 20 N. E. 257; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409, 413, 3 N. E. 389; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544, 554, 14 N. E. 572.

In the absence of any attempt by counsel to show that the excluded questions on cross-examination related to matters of which evidence was introduced at the
9. trial, we must presume in favor of the ruling of the trial court that each of them assumed facts outside of the evidence.

Many other questions have been discussed by coun-sel, but probably they will not arise upon another trial, wherefore we do not decide them.

The judgment is reversed with directions to sustain appellant's motion for a new trial, and for further pro-ceedings not inconsistent with this opinion.