WHITAKER *v.* STATE OF INDIANA.

[No. 29,712. Filed July 8, 1960.]

*Warren Everett* and *N. George Nasser,* both of Terre Haute, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Assistant Attorney General, for appellee.

JACKSON, C. J.—The appellant was charged, by indictment in the Vigo Circuit Court, with the crime of murder in the first degree under Acts 1941, ch. 148, §1, p. 447, being §10-3401, Burns' 1956 Replacement, as the result of the death of his daughter by shooting. Trial was had by jury resulting in a conviction of the appellant and the imposition of a death sentence. From such conviction and sentence stems this appeal.

The indictment herein, omitting formal parts, reads as follows:

". . . that one Thomas W. Whitaker, late of said County and State, at said County and State aforesaid, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder one Regina Whitaker by then and thereon the 25th day of June, A.D., 1957, unlawfully, feloniously, purposely and with premeditated malice shooting at, against and into the body of the said Regina Whitaker, with a certain deadly weapon, to-wit: a firearm, then and there loaded with gunpowder and leaden balls, which said deadly weapon, he, the said Thomas Whitaker then and there had and held in and thereby inflicted a mortal wound upon the said Regina Whitaker, of which mortal wound, inflicted by the said Thomas Whitaker, the said Regina Whitaker sickened and languished, and so languishing, did on the said County of Vigo, State of Indiana, on the 15th day of July, A.D., 1957, die; and so the Grand Jury aforesaid, on their oath aforesaid, do say and charge that Thomas Whitaker did in the manner and form aforesaid, unlawfully, feloniously, purposely, and with premeditated malice kill and murder the said Regina Whitaker, all being then and there contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

The indictment was tested by motion to quash, which motion was overruled; the appellant then entered a plea of not guilty on account of unsoundness of mind, to

which plea the State of Indiana filed answer specifically denying the same.

There was a conflict in the evidence on the question of insanity, and there was sufficient evidence adduced to require the state to prove beyond a reasonable doubt that the appellant was of sound mind at the time the shooting occurred. This burden never shifted from the State. *Flowers* v. *State* (1956), 236 Ind. 151, 160, 139 N. E. 2d 185; *Noelke* v. *State* (1938), 214 Ind. 427, 433, 15 N. E. 2d 950; *McHargue* v. *State* (1923), 193 Ind. 204, 211, 139 N. E. 316; *Walters* v. *State* (1915), 183 Ind. 178, 179, 108 N. E. 583.

The assignment of errors contains six specifications, however, because of the result which we have reached, we need consider only assigned error number six, which reads as follows:

"6. The Court erred in overruling defendant's, (Appellant) motion for new trial."

The motion for new trial contains fifty-six (56) separate grounds, some of which assign the same ruling challenged by the assignment of errors. For the purpose of this appeal we may dismiss from consideration all of the causes enumerated other than those numbered 7, 8, 22, 24, 26, 28, 30, 32 and 34 of the motion for a new trial.

Because the errors therein alleged are likely to occur on a retrial we deem it necessary to consider assigned causes for a new trial numbered seven and eight. The appellant for cause number seven of his motion for new trial complains of the giving of State's instruction number eight, and likewise assigns as cause number eight of the motion for new trial error in giving State's instruction number eleven. Because of the similarity of the

questions raised by said assignment we will consider these specifications together.

Instruction number eight reads as follows:

"Under our law, a person of unsound mind cannot be convicted of any crime, but, even though there was some mental derangement, still if the defendant, Thomas Whitaker, had mental capacity sufficient to adequately comprehend the nature and consequence of his act, and unimpaired will power fully sufficient to control an impulse to commit crime, he is not entitled to an acquittal upon the grounds of unsound mind."

Instruction number eleven reads as follows:

"Insanity means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or not conscious at the time of the nature of the act which he is committing; and also where, though conscious of it, and able to distinguish between right and wrong and knowing that the act is wrong, yet a person's will, by which is meant the governing power of his mind, has been so completely destroyed that his actions are not subject to his volition, and are beyond his control. Where this condition exists, a person cannot be held guilty for crime."

The objections to each of these instructions are essentially (1) that they are in conflict with the laws of this state, (2) that they invade the province of the jury, (3) that they eliminate the law of reasonable doubt, (4) that the instruction does not contain all the elements required in such an instruction.

This court in *Flowers* v. *State, supra,* (1956), 236 Ind. 151, 163, 139 N. E. 2d 185, stated:

"When an accused files a plea that he was of unsound mind and there has been some evidence on this, the decisions of this court are clear the State must prove:

"1. That the accused could know and comprehend the nature and consequences of his act. The nature of the act embraces knowledge on his part that the act was wrong, for if the accused be unable to distinguish right from wrong he would not know the nature of his act.

"2. That the accused had sufficient will power to control his impulse to commit the act charged.

"If the state fails to prove either requirement beyond a reasonable doubt there has been a failure of proof on this issue." *Goodwin* v. *The State* (1884), 96 Ind. 550, 576; *Morgan* v. *State* (1921), 190 Ind. 411, 417, 130 N. E. 528; *Swain* v. *State* (1939), 215 Ind. 259, 268, 18 N. E. 2d 921; *Sweet* v. *State* (1941), 218 Ind. 182, 190, 31 N. E. 2d 993; *Kallas* v. *State* (1949), 227 Ind. 103, 122, 83 N. E. 2d 769; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185.

The instructions complained of were erroneous and should not have been given. Instruction number eight eliminated the requirement that the State prove sanity beyond a reasonable doubt, and prohibited an acquittal on the mental capacity appellant had, not on the mental capacity the State proved he had beyond a reasonable doubt.

This court held an identical instruction be erroneous in *Flowers* v. *State, supra,* (1956), 236 Ind. 151, 160, 161, 139 N. E. 2d 185, and under the law and the evidence in the record here, as was true in the Flowers case, it was the duty of the State to prove the appellant sane beyond a reasonable doubt.

If the instruction was erroneous in the Flowers case it is erroneous under the evidence in this case.

Instruction number eleven does not correctly state the law in Indiana as it pertains to insanity which will relieve an accused of criminal responsibility. See: *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769; *Swain*

v. *State* (1939), 215 Ind. 259, 18 N. E. 2d 921; *Goodwin* v. *The State* (1884), 96 Ind. 550.

Causes numbered 22, 24, 26, 28, 30, 32 and 34 of the defendant's motion for a new trial relate to the refusal of the court to grant the defendant's request to keep the jurors intact. Motions to do so were timely filed and renewed at the close of each day's testimony before adjournment.

In these several motions appellant requested that the jurors be kept in charge of the bailiff in a private room, not be allowed to mingle in the corridor of the court house, that they be kept at a hotel without a radio, television, or newspaper facilities, that they not be allowed to go home at night, and that they not be permitted to separate for lunch. It further appears from the record that the appellant orally and in writing, during the voir dire examination and during the trial seven times objected to the jury separating.

"The law which governs the matter of the separation of trial jury during and before a verdict is returned, or the jury discharged, is the common law, as interpreted by our courts, and not the statute. In Indiana, the common law has been recognized to the extent that the trial jury in the trial of a felonious offense, may not be allowed to separate at any time during the trial and until after verdict. *Jones* v. *State* (1831), 2 Blackf. (Ind.) 475. Later the rule was modified, to the extent that judicial permission for the jury to separate during the trial, without the consent of the defendant, was error. *McCorkle* v. *State* (1859), 14 Ind. 39, 41. There is no doubt that the court's permission for the jury to separate during the trial of the cause, over the objection of the defendant, was error. *Quinn* v. *State* (1860), 14 Ind. 589; *Anderson* v. *State* (1867), 28 Ind. 22, 24. This rule of law has been very recently upheld so that further reasoning would be of no avail. *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514; *McKinney* v.

*People* (1845), 7 Ill. 540, 43 Am. Dec. 65, see note p. 80." *Silverman* v. *State* (1927), 199 Ind. 225, 230, 156 N. E. 549.[1]

The reason for this rule has not changed and we see no reason to overthrow it.

The court erred in permitting the jury to separate during the trial and before a verdict was returned over the objections of the defendant-appellant.

There are other errors assigned by the appellant, but in view of our decision, we feel it unnecessary to discuss these points since it is not likely that the questions will arise again on a retrial.

The action of the court, in overruling defendant-appellant's motion for a new trial was error. The judgment of the trial court is reversed with directions to sustain the motion for a new trial.

Judgment reversed.

Bobbitt, J., concurs.

Achor, J., concurs with opinion.

Arterburn, J., dissents in part and concurs in part with opinion.

Landis, J., concurs in opinion written by Achor, J.

## CONCURRING OPINION

ACHOR, J.—I concur in the opinion as written by Chief Justice Jackson except in this particular:

---

1. In the opinion written by Judge Arterburn there appears the following statement "The appellant relies upon the cases of *Silverman* v. *State* (1927), 199 Ind. 225, 156 N. E. 549 and *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514." True those cases dealt with felonies which did not involve capital punishment, but did involve the question of reversible error in permitting the jury to separate over the objections of the defendant.

I do not believe at the time they were written the cases of *Silverman* v. *State* (1927), 199 Ind. 225, 156 N. E. 549, and *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514, cited and quoted in the opinion correctly stated either the common law or the legislative intention relative to the separation of juries during the trial in non-capital cases. Therefore, I do not want it to be considered that by referring to said cases it is to be inferred that I now reaffirm the statement quoted from the Silverman case as it is related to non-capital cases.

## CONCURRING IN PART AND DISSENTING IN PART

ARTERBURN, J.—Appellant was charged by indictment with first-degree murder of Regina Whitaker, his nine-year-old daughter. He entered a plea of not guilty and also a plea of not guilty by reason of unsoundness of mind. He was tried by jury and found guilty for the crime of murder in the first degree and the penalty was fixed at death. Appellant filed a motion for new trial which was overruled and judgment was entered on the verdict. This appeal is from that judgment.

One of the points most strongly argued in this case is that the court committed error in overruling appellant's motions from time to time to keep the jury together and separated from outside influence during the trial. This point is raised in the motion for a new trial. There is, however, no verification or showing made that a condition existed in which the jury was subjected to prejudice and undue influence as a result. On the other hand, the State met this allegation by a verified answer denying the jury, although they were permitted to separate at adjournment each day of the trial, was in any way subjected to undue or prejudicial influences during

the trial. The affidavits of each of the jurors to that effect were also filed on behalf of the State.

We have therefore squarely presented first, whether or not in the overruling of a motion to keep a jury together, prejudice is conclusively presumed without any proof, or whether there must be proof of prejudicial error before it will affect the result. We also have presented the question of whether or not the separation of the jury is discretionary with the court. If it is, then prejudicial error must be shown. The question may be put in another fashion. Is it mandatory that a jury be separated upon request or is it discretionary with the court? If the latter be true, then no error is committed unless there is a showing of prejudicial error and an abuse of discretion on the part of the court as a result.

The appellant relies upon the cases of *Silverman* v. *State* (1927), 199 Ind. 225, 156 N. E. 549 and *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514. Each of these cases, unlike the present case, involved *not a capital case* but other *felonies*. The *Faulkner Case, supra,* involved the charge of assault and battery with intent to commit robbery and the *Silverman Case, supra,* involved the transporting of intoxicating liquors. This Court in each case held that upon request in *all felony* cases it was mandatory to keep the jury separate during the trial and they should not be permitted to go to their homes upon adjournment each day. The *Faulkner Case, supra* says (at p. 668) :

"It has been uniformly held in Indiana and has generally been the practice, that in a trial of felony, the jury should not be permitted to separate during the trial, over the objection of the defendant."

This is not a correct statement of the law, as an examination of the earlier cases in Indiana will show.

The first case, *Jones* v. *State* (1831), 2 Blackf. 475, involved a murder case. The statement there is simply made that a defendant is entitled to have the jury kept together. There are no citations of any authority. That case should be limited to the very simple fact that it was a capital or murder case, yet it is cited as authority in the *Faulkner* and *Silverman Cases, supra,* for the application of the rule *in all felony* cases and not merely capital cases. There is no reason why this early case should be stretched to cover all felonies generally in view of the majority rule outside of Indiana to the contrary. 34 A. L. R., 1115; 79 A. L. R., 821; 21 A. L. R. 2d, 1088; 53 Am. Jur., Trial, §867, p. 629.

*Evans* v. *State* (1855), 7 Ind. 271, involved also a capital punishment case, but it repudiates the mandatory duty of the court not to permit a separation of a jury in a murder case. This case considers the statute which says in part: "When the jurors are permitted to separate, after being impaneled, and at each adjournment, they must be admonished by the court. . . ." (Burns' §9-1808.) The court says:

> "The separation of the jury is expressly permitted, during the trial and before the cause is finally submitted to them, by *this statute,* and, of course, they could be kept in care of a sworn officer. The case of *Jones* v. *State,* 2 Blackf. 475, can not be regarded as authority." (Our italics.)

Here is the first interpretation of the statutes we have in Indiana which implies the discretion of the court even in capital cases to decide whether the jury should be kept together or not.

The next case is *Quinn* v. *The State* (1860), 14 Ind. 589. It involves a conviction of murder in the second degree and holds a jury must be kept together if requested by the defendant. It is interesting to note that

it totally ignores the two previous cases that dealt with the question and relies on the case of *McCorkle* v. *The State* (1859), 14 Ind. 39, which is not in point and merely holds that if a jury has been impaneled and discharged by the court without the consent of the defendant, jeopardy has attached. There was no question in that case of the right to have the jury kept together. It also ignores the interpretation given to the statute that it is discretionary in *Evans* v. *State, supra.*

Then next, in *Anderson* v. *State* (1867), 28 Ind. 22, the court holds that it is mandatory to keep a jury together *if requested* and goes back and relies upon *Jones* v. *State, supra,* and says that *Evans* v. *State, supra,* did not hold that under the statute it was discretionary with the judge. This is certainly a misrepresentation of what is plainly stated in *Evans* v. *State, supra.* (See quote above.)

In *Henning* v. *State* (1886), 106 Ind. 386 it is correctly said: (p. 396.)

". . . Our decisions, however, upon this subject are not entirely harmonious. . . . These cases agree on one point, at least, that a separation of the jury during the trial is not error unless an objection is interposed. It is not necessary for us to decide whether the rule declared in *Anderson* v. *State, supra,* and *Quinn* v. *State, supra,* is or is not the correct one, for all we need do is to decide that the error, conceding it to be one, is such as may be ,waived."

The above statement was the last, so far as we can find, with reference to the condition of the law in this State in permitting the separation of a jury in a capital case. The *Faulkner* and *Silverman Cases* of 1923 and 1927, *supra,* dealt merely with felonies which did not involve capital punishment.

It does not appear to be the law, therefore, as stated in the *Faulkner Case,* that it has "been *uniformly* held in Indiana . . . that in a trial of felony, the jury should not be permitted to separate" (our italics) over the objections of the defendant. It is further pointed out that these two cases rely upon the *McCorkle Case, supra,* which is not in point whatsoever. The scope and broadness of the principle as announced in the *Faulkner* and *Silverman Cases,* in our opinion, have no legal basis in Indiana law and are contrary to the weight of authority outside this State. 53 Am. Jur., Trial, §867, p. 629; 23 C. J. S., Criminal Law, §1355, p. 1014; 34 A. L. R., p. 1130; 55 Am. Rep. 756; *State* v. *Howard* (1918), 117 Me. 69, 102 Atl. 743; *State* v. *Woods* (1958), 154 Me. 102, 144 A. 2d 259; *The People* v. *Stowers* (1912), 254 Ill. 588, 98 N. E. 986; *People* v. *Konkowski* (1941), 378 Ill. 616, 39 N. E. 2d 13.

In ancient times the English law required that a jury "be kept together in some convenient place, without meat, or drink, fire or candle." 2 Co-Litt. 2272; 1 Stephen, A History of the Criminal Law of England (1883), 305, 306; *Bishop of N.* v. *Earl of Kent,* 14 Hen. VII (Eng.) chap. 29.

The harshness of such treatment, which amounted to coerced verdicts, has been ameliorated in the years since, with more reasonable treatment of juries. A separation, however, is but rarely permitted over the objection of a defendant *in a case involving the death penalty.* 34 A. L. R., 1115.

In 53 Am. Jur., Trial, §867, p. 629, it is said:

"While at common law jurors in criminal cases were not permitted to separate even with the consent of the defendant, it is now generally recognized that the trial court may in its discretion, in the trial of a prosecution for a misdemeanor, permit the jury to separate after the commencement of

the trial, and in most jurisdictions this discretion exists in prosecutions for felonies as well, with the exception of capital felonies. . . ."

34 A. L. R., 1115 gives quite an extensive commentary upon the law in various jurisdictions in connection with the separation of a jury in a criminal case. It says, at p. 1130, in summary:

"In many jurisdictions it is held that, in the trial of felonies not capital, the jury may, in the discretion of the court, be permitted to separate and disperse after a proper admonition not to converse about the case during recesses and adjournments, unless some sufficient cause is shown why they should be kept together."

Annotations with the above statements list the many jurisdictions in accordance with the comment.

In *Commonwealth* v. *Tenbroeck* (1919), 265 Pa. 251, 108 Atl. 635, p. 637, it is said:

"We deem it proper to say that, in a case where the jurors have in charge the prisoner's life, no pains should be spared to secure a strict observance of the rule that they be kept together and free from even a suspicion of improper influence." (See also: *State* v. *Cooper* (1958), 4 Wis. 2d 251, 89 N. W. 2d 816.)

It thus appears that the two cases (*Silverman* and *Faulkner Cases, supra*) assume to extend the mandatory duty of a judge to keep a jury together and not permit them to separate upon the request of the defendant *in all felony cases*, is not only unsupported by precedent in this State, but is entirely out of line with the majority rule followed in other jurisdictions. In our opinion, these two cases were founded in error and the error should not be compounded by approving them. The cases of *Silverman* v. *State* and *Faulkner* v. *State, supra*, should be overruled.

Sometimes cases viewed in retrospect appear so out of line with current law and logic as a whole that they must be overruled. We judicially know that there are many small county seats which do not have adequate facilities for keeping juries in every felony case separated day and night.[1] We also judicially know there are many cases which receive no or practically no publicity whatsoever and there is no necessity of making prisoners of the jurors during the trial, thus preventing them from making telephone calls or going back to their respective homes to perform their chores, duties and business affairs at adjournment of the trial each day.

The law is not so helpless and so inconsiderate as to force without reason hardships upon jurors and needless costs and expenses upon taxpayers. It is a recognized fact that it is difficult to get competent persons to serve as jurors and yet the very foundation of the jury system depends upon the willingness and patriotism of the average citizen to accept such duties and responsibilities. The task of these patriotic and dutiful citizens should not be made unnecessarily arduous and difficult. There are times when juries should not be permitted to separate and come under the influence of extensive publicity and contacts relating to the trials in which they are participating. Except in capital cases, trial judges should normally be trusted with the use of discretion in determining the needs for keeping a jury together or permitting them to separate. The abuse of such discretion may be reviewed by this court.

In 21 A. L. R. 2d, p. 1100, with reference to the authority of the trial court to use its discretion in keeping a jury together, this statement is made:

---

1. For a recognition of the practical difficulties in small communities, see *State* v. *Ferguson* (1939), — Mo. —, 133 S. W. 2d 1023.

". . . This trend toward increased authority and power in the trial court seems to be in recognition of the fact that separation is a procedural matter, and that the trial judge is closer to the situation, has control over the trial and the parties, often knows the jurors, particularly in the smaller counties, and can determine with reasonable accuracy whether a proposed separation will be harmful, or whether one that has taken place was injurious."

Some of the previous cases cited above refer to the following statute as a recognition that the trial court is given a discretion during the trial in deciding whether or not a jury should be kept together:

"When the jurors are permitted to separate, after being impaneled, and at each adjournment, they must be admonished by the court that it is their duty not to converse among themselves, nor suffer others to converse with them, on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them." Acts 1905, ch. 169, §263, p. 584, being §9-1808, Burns' 1956 Repl.

This statute clearly recognizes the prevailing common law rule which gives a trial court discretion in overruling a request that a jury be kept together during the hearing of evidence in all felony cases except that involving capital punishment. *Evans* v. *State* (1855), 7 Ind. 271; *Henning* v. *The State* (1886), 106 Ind. 386, 6 N. E. 803, 7 N. E. 4. It is to be noted that this statute does not cover the period during deliberations. This distinction was further emphasized in a following section of the statute:

"After hearing the charge, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer, who must be sworn by the clerk to keep them together in some private and convenient place, and furnish them food as directed by the court, and not permit any person to speak or communicate with them, nor do

so himself unless by order of the court, or to ask them whether they have agreed upon their verdict, and return them into court, when so agreed, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations; and if he does he shall be punished as for a contempt, and shall not be further employed as a bailiff in such court." Acts 1905, ch. 169, §265, p. 584, being §9-1810, Burns' 1956 Repl.

Upon the case being submitted to them "for deliberation," the statute then specifically provides the members shall be kept together. Why did not the act include the proceedings during the trial also if such was intended?

It is further to be noted that in Burns' §9-1903 it is provided that:

"The court shall grant a new trial . . .

.　.　.

"Second. When the jury has separated without leave of the court, *after retiring* to deliberate upon the verdict." (Our italics.)

At no place in the causes set up for a motion for new trial is there a specification in the statute that a separation of the jury *during the trial* is a cause for a new trial. There is a provision, however, in the same section of the statute which states: "When the jury has been guilty of any misconduct tending to prevent a fair and due consideration of the case," a new trial may be granted.

We feel that a defendant in a case involving the death sentence has the mandatory right to require, upon request, that the jury be kept together during the trial and not be permitted to separate. In all other cases the court has the discretion to determine whether or not a jury should be kept together during the trial or be per-

mitted to separate under such directions and instructions as the court may give. The exercise of such discretion is reviewable by this Court for any alleged abuse. In such event, the defendant must show prejudicial error.

The judgment should be reversed.

NOTE.—Reported in 168 N. E. 2d 212.