JOHNSON *v*. STATE OF INDIANA.

[No. 1269S309. Filed December 3, 1970.]

*Bob Good,* of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *R. Michael Bruney,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from the Hamilton Superior Court where appellant was found guilty of rape. The appellant was charged by affidavit on July 6, 1966, in the Superior Court of Hancock County with the rape of a fifteen

year old girl. On September 8, 1966, appellant was committed to the Division of Maximum Security of the Dr. Norman M. Beatty Memorial Hospital upon the recommendation of two court-appointed psychiatrists, who found that appellant was not competent to stand trial. After nearly three years, the hospital determined that appellant was competent to stand trial.

A motion for a change of venue from Hancock County was granted, and a trial by jury commenced on August 26, 1969, in the Hamilton Superior Court, the jury finding appellant guilty of the crime of rape.

Around 10:00 a.m. on the morning of July 5, 1966, Karen Sue Briles went out of her home in New Palestine, Indiana, to water the sheep for her father. She went into the well-house next to the barn to get water, and, leaving the well-house, she closed the door and walked towards the road. She had just taken a few steps when she was confronted by the appellant, who grabbed her. She was made to walk back to the well-house, where she was forced to open the door and was pushed inside. Although Karen screamed three or four times, she was pushed to the ground by the appellant, hitting her head on the cement foundation of the well-house. When Karen refused to take off her shorts, the appellant tore them off and proceeded to have intercourse with her.

Appellant left the well-house after Karen told him she would not talk and would wait ten minutes before she would leave. A few minutes later, Karen proceeded to go to her father and they contacted the police, who apprehended appellant a short time later near the railroad track close to the Briles' residence.

Appellant contends that the trial court erred in overruling his motion for a mistrial, which pertained to his competency to stand trial, and that the verdict of the jury is contrary to law and is not sustained by sufficient evidence.

Appellant, at the conclusion of the evidence, made an oral motion for a mistrial, stating that the evidence indicated the

defendant had a loss of memory which probably resulted from electric shock therapy at the Dr. Norman M. Beatty Memorial Hospital. The prosecuting attorney opposed the motion, with the contention that shortly prior to the trial the appellant had been released from the Maximum Security Division of the Dr. Norman M. Beatty Memorial Hospital by a certificate of the psychiatric staff, which found that he was competent to stand trial. A staff meeting record was also submitted to the court and, after due consideration, the court found that the defendant had sufficient comprehension to stand trial for the rape charged. Burns' § 9-1706(a) gives the court discretion in determining whether or not to have additional psychiatrists appointed for that purpose, and under the circumstances in this case, in our judgment, this was a discretionary matter with the trial court, after having heard the evidence relative thereto. We find no error in the court's overruling of such a motion.

Appellant pleaded insanity. The court accordingly appointed three psychiatrists who testified at the trial. Appellant now contends that the evidence is uncontradicted, showing that he was insane at the time of the alleged offense since the State offered no psychiatric or medical testimony directly on the issue of insanity. We cannot agree with appellant's contention that the testimony of the psychiatrists is uncontradicted. It appears to us the testimony of the psychiatrists was equivocal and qualified in character.

Dr. Donahue, a court-appointed psychiatrist, was asked by the court:

"Q. . . . do you have an opinion as to whether at the time the alleged offense occurred, assuming, in fact, that they did occur, and the defendant did them, do you have an opinion as to whether the defendant, at the time of the act, knew that the act was right or wrong; in other words, could he tell the difference between right or wrong, in your opinion?

"A. I would have considerable doubt that he was able to tell the difference between right and wrong at that time."

Dr. Hull, to a like question propounded by the court, answered:

"In all probability he did not know the difference between right and wrong."

Dr. Schuster, a court-appointed psychiatrist, in answer to a question by the court, stated that he did not believe the defendant, at the time of the alleged act, could determine the difference between right and wrong. In the next question, however, when the court asked him if in his opinion the defendant had the ability to know and comprehend the consequences of his act, his answer was: "I don't have an opinion about that." At another point, when the court asked this same doctor whether or not in his opinion the defendant had an irresistible impulse to commit the act charged, the doctor answered: "there was not an irresistible impulse, or to my knowledge there was not an irresistible impulse."

In other words, these psychiatrists were not absolute and definite in their opinions. There was room for some equivocation and doubt. This is demonstrated by the fact that on cross examination of Dr. Schuster the following colloquy took place:

"Q. Assuming that this subject had told an indivdual, immediately following the alleged act, not to tell any one, would this affect your opinion on this?

"A. Yes, if it were definite, if I believed that this statement were true, this would indicate that the individual had an awareness of what had taken place.

"Q. And would this, to you, be evidence of his ability to distinguish right from wrong?

"A. That would be an indication, yes, that he assumed that it was wrong."

Thus, there is expert testimony that the appellant knew that his act was wrong. Additionally, when the appellant left the victim in the well-house, he asked her how he would know that she was not going to tell or talk, and she said "Well, I won't" and told him she would give him 10 minutes before

she would leave. These are all indicative of the knowledge of his guilt, which evidence the jury had a right to take into consideration, and which evidence, so far as we can find, the psychiatrists did not consider in their expert opinion.

In this case the evidence does show that the defendant had an awareness that his act was wrong and evil. He took the victim to a secluded spot in a well-house, rather than commit the act openly, in plain view of third parties. After it was over, he attempted to conceal the act and fled. In our opinion these factors may be considered by the jury in determining the sanity of the defendant and his knowledge that the act he was doing was wrong. The jury had the right to accept any one of the statements of the psychiatrists or any part of them, or to reject them all, where there was contradictory evidence, and to weigh all the facts in the case on the issue of sanity. We recognize that once the issue is raised, the burden of proving sanity is on the State. However, until the issue is raised and evidence is introduced to dispute or contradict sanity, the State is not required to introduce evidence to prove sanity. As long as there is evidence to support the issue of sanity, the jury has a right to reach its own conclusion on that issue. We find there is evidence here to support the jury's conclusion. *Shipman* v. *State* (1962), 243 Ind. 245, 183 N. E. 2d 823; *Freese* v. *State* (1903), 159 Ind. 597, 65 N. E. 915.

Whether the appellant has a disease or defect sufficient to meet the standards of insanity is a question for the triers of the fact, to be determined from all the evidence, including both the lay and the expert testimony. The opinions of the psychiatrists in this case were not absolute in nature, and even if they were, the jury had a right to take into consideration other facts which the psychiatrists did not consider or, which the evidence fails to show, that the psychiatrists did take into consideration in determining the defendant's sanity. *Hill* v. *State* (1969), 252 Ind. 601, 251 N. E. 2d 429.

The judgment of the trial court is affirmed.

Hunter, C.J., and Givan, J., concur; Jackson, J., dissents with opinion, in which DeBruler, J., concurs.

### DISSENTING OPINION

JACKSON, J.—I am unable to agree with the majority opinion herein and dissent thereto.

Appellant's motion for a new trial, omitting heading, formal parts and signature thereto, reads as follows:

"Comes now the defendant, Junior Lee Johnson, and moves the Court herein for a new trial on each of the following grounds:

1. Error of law accruing at the trial in this, to wit: That the court overruled defendant's motion for mistrial made at the conclusion of the evidence and before closing arguments and submission to the jury.

2. Error of law accruing at the trial in this, to wit: That the court refused to give defendant's tendered final instructions numbered 3, 4, 5 and 7.

3. The verdict of the jury is contrary to law.

4. The verdict of the jury is not sustained by sufficient evidence.

### MEMORANDUM

At the conclusion of the evidence of the parties, the psychiatrists appointed by the court were called and examined by the court, the Prosecuting Attorney, and the attorney for the defendant. Their testimony disclosed that following his arrest and during his commitment to a mental hospital before trial, the defendant underwent 26 electric shock treatments and that such shock therapy had seriously and substantially affected the defendant's memory; that by reason of the therapy and the resulting loss of memory, including the loss of memory concerning the events of the date alleged in the affidavit, the defendant was seriously impaired in his ability to assist his counsel and make his defense.

The issue of the defendant's ability to make his defense was raised specifically on the motion for mistrial at the conclusion of the evidence of the psychiatrists. The record of the cause, known to the court, also disclosed that three years prior to trial the defendant had been adjudged incompetent and unable by reason of insanity to understand

the nature of the offense charged or to make his defense and was at that time committed to a mental hospital until such time as he could stand trial.

There was no evidence to contradict the testimony of the psychiatrists that, at the time of the trial, defendant did not have sufficient mental capacity or memory to make his defense and to properly assist his counsel in the preparation and presentation of such defense.

The applicable statute provides that if the issue of the defendant's competence is raised at any time before or during the progress of the trial of any criminal cause, the court *shall* make a finding on the issue and that if the court shall find that the defendant has not comprehension sufficient to understand the proceedings *and make his defense*, he shall be committed to the division for maximum security of the Dr. Norman M. Beatty Memorial Hospital. Burns Ind. Stat. Anno. (1969 Supp.) Sec. 9-1706a.

It is the contention of the defendant that, in view of the prior commitment of the defendant, his plea of insanity, the uncontroverted testimony of the psychiatrists who were appointed by the court to make a finding on the issue and the motion to the defendant at the conclusion of the evidence the court erred in refusing to grant a mistrial and recommit the defendant and that the issue of the defendant's sanity was not one which was subject to the discretion of the court but was which, upon such proof, required the court as a matter of law to declare a mistrial.

The Indiana Supreme Court held, in the first instance in which the issue was ever before the court, that the trial court which commits a defendant under the provisions of Burns Sec. 9-1706a, has continuing jurisdiction thereafter to again determine the issue of the defendant's mental capacity to stand trial. *Finkenbiner* v. *Dowd* (1952), 231 Ind. 416, 108 N. E. 2d 261.

In that decision the Court stated as follows:

'The Wabash Circuit Court has the sole jurisdiction under the provisions of said Sec. 9-1706, supra, to determine when, and if, defendant has sufficient comprehension to understand the criminal proceedings there pending against him and make his defense thereto, and it does not lose jurisdiction to determine this question because the superintendent of the State Hospital for Insane Criminals where appellant was confined notified the judge of said Wabash Circuit Court in the month of April, 1950, that appellant had been restored to sanity and he was subsequently returned

to Wabash County to face trial a second or subsequent time.'

In other words, the certification of the institution which had custody of the defendant is not binding on the issue of his capacity to stand trial and the court continues to have the responsibility of making a determination thereof whenever he is returned for trial. Thus, it would appear that the court must rely on the opinions of the examining psychiatrists rather than on the certification of the institution. In the present case, all of the evidence showed that the defendant could not have met the competency test provided in the statute and should not have been tried.

The court further committed error in refusing to give defendant's tendered final instructions 3, 4, 5 and 7 which were proper statements of the law, were applicable to the evidence produced on trial and were not fully covered by the court's instructions.

The verdict of the jury was contrary to law and was not sustained by sufficient evidence for the reason that the defendant entered his plea of not guilty by reason of insanity, placing the burden of proof on the issue on the state, and the uncontroverted evidence clearly showed that the defendant was insane at the time of the offense. The *only* evidence presented on the question of the defendant's sanity was the testimony of the psychiatrists which clearly disclosed that 1) the defendant did not have the mental capacity to distinguish right from wrong, and 2) he did not have the capacity to control his actions. There was also testimony that he responded to an insane impulse in committing the offense. The jury completely disregarded the uncontroverted evidence and the instructions of the court on the issue of the defendant's capacity to form the necessary intent to commit a crime, and therefore, the verdict was contrary to law and was not supported by any evidence whatever to sustain the burden of proof required of the state under the defendant's plea."

Appellant's Assignment of Error is the single specification as follows: "The Court erred in overruling appellant's motion for a new trial."

A factual review of the record and events leading up to the trial in this case briefly is as follows: On July 5, 1966, the defendant was arrested by the Town Marshal of the Town of New Palestine, Indiana. On July 6th he was charged by

affidavit in the Superior Court of Hancock County, Indiana, with the rape of one Karen Sue Briles, a child fifteen years of age. On July 6th the defendant was brought before the then Judge of the Hancock Superior Court where he was advised of his rights, and where he requested the appointment of counsel by the court, the defendant being without assets. The following day, July 7, 1966, the Court appointed pauper counsel for the defendant.

On September 1, 1966, the defendant, through counsel, filed a petition for the appointment of psychiatrists to examine the defendant as to his sanity. Thereafter the court appointed two psychiatrists.

The psychiatrists classified the defendant as mentally deficient with possible psychotic illness, and recommended that he be hospitalized in the state mental hospital. On September 8, 1966, the court committed the defendant to the Division for Maximum Security of the Norman M. Beatty Memorial Hospital. The evidence of such psychiatrists is set forth in the transcript at pages 35 through 41 and is here omitted.

The defendant spent nearly three years in the Norman Beatty Memorial Hospital, and on May 16, 1969, the Medical Director of the Beatty Hospital, Dr. Frank D. Hogle, reported that the defendant was competent to stand trial.

In his written report to Judge Lewis, Dr. Hogle advised the court that at the time of his admission the defendant had a measured I.Q. of 59, a measurement within the "moderately mental retarded range."

Following this report the defendant filed a motion for a change of venue from the county. The court granted the motion and the venue was changed to the Hamilton Superior Court at Noblesville, Indiana.

The Judge of the Hamilton Superior Court promptly set the arraignment of the defendant for June 20, 1969, and appointed new counsel for the defendant.

The defendant was arraigned on June 17, 1969, and filed

a plea of not guilty, and a plea of not guilty for reason of insanity. This time the court appointed three psychiatrists to examine the defendant. Judge Shields appointed Dr. Schuster and Dr. Hull, who had examined the defendant prior to his original commitment back in September, 1966, and added Dr. James Donahue, also a Marion County psychiatrist.

In answer to the defendant's plea of insanity, the State filed its answer in general denial. The trial of the defendant commenced in the Hamilton Superior Court on August 25, 1969.

The State called ten witnesses. The primary testimony was given by the alleged victim, Karen Sue Briles. Her testimony was supplemented by that of her parents, Paul and Harriet Briles, the family doctor, a laboratory technician, and five police officers who participated in the investigation. The defendant did not call any witnesses.

Judge Shields called her witnesses for the court, the three court appointed psychiatrists, Dr. Schuster, Dr. Hull and Dr. Donahue. The jury found the defendant guilty of the crime of rape.

The verdict, omitting heading and signature, reads as follows:

"We, the Jury, find the defendant guilty of the crime of Rape, as charged in the amended affidavit, and that his age is — years.

We have not been able to determine the age of said defendant from the testimony given."

Following the verdict of the jury the court entered judgment thereon finding the defendant guilty of the offense of Rape.

A Pre-sentence report was ordered, and sentencing was set for 9:30 a.m. on September 12, 1969. On said date the presentence report was filed and, therewith, the Probation Officer attached a report from Beatty Memorial Hospital. Sentencing followed as follows:

"Comes now the State of Indiana, by C. Donald Dawson, Prosecuting Attorney, and comes now the defendant in person and by counsel, and the defendant states he had no legal reason why his sentencing should not proceed, and the Court now determines and finds the defendant's true age as 24 years; and now the Court, pursuant to the verdict of the jury, and the judgment of the court, all heretofore, rendered, does now sentence the defendant, Junior Lee Johnson, to the Indiana State Reformatory for a term of not less than (2) years nor more than twenty-one (21) years for the offense of Rape, and the Sheriff of Hamilton County, Indiana, is ordered to execute this sentence; costs taxed to defendant."

The testimony of the three court appointed psychiatrists may be summarized as follows: Dr. James M. Donahue testified that, in his opinion, the defendant's mental condition on the date of the alleged offense, the 5th day of July, 1966, would have been diagnosed psychiatrically as a schizophrenic illness, a type of emotional disturbance, and that, as a result, his ability to think clearly, form a rational judgment or to behave in a normal fashion was seriously affected thereby. The Doctor further testified that in his opinion the defendant was unable at that time to tell the difference between right and wrong. Dr. Dwight Schuster in response to a question stated that, in his opinion, the defendant was, on the 5th day of July, 1966, mentally incompetent, and when asked what he meant by that term answered as follows: "Well, that's, of course, a legal term we specify to indicate the defendant was not capable of understanding the nature of the charges against him or to make his own defense thereto."

Dr. Ronald Hull in response to a question as to whether or not he had an opinion as to the defendant's mental condition on the 5th day of July, 1966, at the time the alleged events occurred involving charges against the defendant of statutory rape, answered as follows:

"A.   Yes, it is my opinion that he was mentally ill at that time, was probably with a schizophrenic type of disorder with complicating mental retardation to a mild

degree; so that he had rather severe symptoms of that mental illness at that time."

The Doctor was asked this further question:

"Q. May I ask if you then have an opinion Dr. Hull, as to whether at the time the alleged offense occurred, and assuming that it did, in fact, occur, on the 5th day of July, 1966, that this defendant committed the act, do you feel he knew or could have known and comprehended—Do you feel, first of all, presuming that the events occurred on July 5, 1966, and that, in fact, the alleged offense was committed by the defendant, do you feel that at that time the defendant could know and comprehend the nature and consequences of the act or of the offense that he was performing?"

To which question the Doctor made the following answer:

"A. I do not feel he could.
Q. You do not have an opinion?
A. I do not feel that he could comprehend.
Q. May I ask if you have a further opinion whether the defendant at that time, presuming that the act, in fact, occurred and the defendant committed the act or offense, if the defendant knew at that time the difference between right and wrong?
A. In all probability, he did not know the difference between right and wrong."

In the case at bar there can be no question but what the record discloses that the defendant had previously been found to be of unsound mind to such a degree that he was sent to Norman Beatty Hospital, where he remained for a period of approximately three years, and during such time was held to be incapable of being tried on the criminal charge filed against him. In the case at bar, there can be no doubt of the insanity of the defendant by virtue of such confinement and previous decisions of this Court which have held that, where there is a conflict in the evidence on the question of insanity and there is sufficient evidence of this, the State is required to

prove beyond a reasonable doubt that appellant was of sound mind at the time of the occurrence of the acts for which he is being charged. This burden never shifts from the State. *Flowers* v. *State* (1956), 236 Ind. 151, 160, 139 N. E. 2d 185; *Noelke* v. *State* (1938), 214 Ind. 427, 433, 15 N. E. 2d 950; *McHargue* v. *State* (1923), 193 Ind. 204, 211, 139 N. E. 316; *Walters* v. *State* (1915), 183 Ind. 178, 108 N. E. 583.

Under the determination made in the above cited case of *Flowers* v. *State, supra,* this Court held:

"When an accused files a plea he was of unsound mind and there has been some evidence on this, the decisions of this court are clear the State must prove:

1. That the accused could know and comprehend the nature and consequences of his act. The nature of the act embraces knowledge on his part that the act was wrong, for if the accused be unable to distinguish right from wrong he would not know the nature of his act.

2. That the accused had sufficient will power to control his impulse to commit the act charged. If the State fails to prove either requirement beyond a reasonable doubt there has been a failure of proof on this issue." *Whitaker* v. *State* (1960), 240 Ind. 676, 168 N. E. 2d 212; *Kalles* v. *State* (1949), 227 Ind. 103, 122, 83 N. E. 2d 769; *Sweet* v. *State* (1941), 218 Ind. 182, 190, 31 N. E. 2d 993; *Swain* v. *State* (1939), 215 Ind. 259, 268, 18 N. E. 2d 921; *Morgan* v. *State* (1921), 190 Ind. 411, 417, 130 N. E. 528; *Goodwin* v. *State* (1884), 96 Ind. 550, 576.

The State has wholly failed to sustain its burden in respect to the necessary proof as to the sanity of the defendant, and, therefore, the judgment of the trial court should be reversed and remanded with instructions to sustain appellant's motion for new trial.

DeBruler, J., concurs.

NOTE.—Reported in 264 N. E. 2d 57.